Stewart *v.* Berry *et al.*, executors.

1. Land held under bond for titles and partially paid for by the purchaser is subject to levy and sale as his property under §3586 of the code. Nor will rescission by vendor and vendee, after a judgment against the latter but before levy, defeat the lien of the judgment.
2. Evidence of value is some evidence of price, and is therefore admissible on the latter question.
3. Death of the purchaser and rescission before the levy, excused the creditor from giving him notice as holder of the bond for titles.
   January 8, 1890.

Levy and sale. Vendor and purchaser. Rescission. Judgments. Evidence. Notice. Bonds for title. Before Judge Milner. Murray superior court. August term, 1889.

A *fi. fa.* issued from a judgment of August 16, 1886, was, on January 3, 1889, levied on 80 acres of land off
v 84-12

the northwest side of lot No. 225 in the 9th district and 3rd section of Murray county, known as the Eldridge place, C. N. Vance being then resident upon it; also upon 43 acres in the northeast corner of said lot, lying east of the Spring place and Cohutta Springs road, "now in possession of W. H. Staples." The levy recited that the title to said land "is held by John Bryant, and J. W. Patrick, now deceased, held bonds for title, with part purchase money paid. The entire interest stipulated in the bond for title is levied on and will be sold," etc.; the levy being on said interest as the property of Patrick, defendant in execution. A claim was interposed by Bryant, who denied that Patrick or his estate held it under bond for title with part of the purchase money paid, or had any equitable or legal interest in it·

Bryant having died, his executors were made parties. The case was submitted to the presiding judge for determination without a jury. Upon the trial, plaintiff in *fi. fa.* introduced a bond for title from Bryant to Patrick, dated September 19, 1882, conditioned to make titles to the eighty acres above mentioned, upon the payment of a promissory note for $400, due January 1, 1883, with interest after maturity at 10 per cent. per annum, dated September 19, 1882, and made by Patrick to Bryant. Also, a similar bond as to 43 acres in the northeast corner of lot 225, dated April 4, 1876, in consideration of the payment of a note by Patrick to Bryant for $95.20 with interest at 12 per cent. from date, dated April 4, 1876, and due January 1, 1877. Also the two notes mentioned in these bonds, bearing credits of interest to January 1, 1885. It was admitted that the legal title was, and had been since 1874, in Bryant. Plaintiff showed that notice of the levy was given to the widow of Patrick, and that a notice was sent through the mail by the sheriff to Bryant, who had acknowledged receiving it. Other evidence tended to show

that Patrick was in possession of the land at the date of plaintiff's judgment, and for some time afterwards. He went into possession under the two bonds, and so remained until the trades between him and Bryant were rescinded, when the possession was delivered to Bryant. Bryant was heard to say that the $95.20 note was for balance of purchase money of the land described in the bond dated April 4, 1876. The note and bond dated September 19, 1882, were written by Trammell Starr, who either wrote another note or saw one afterwards, for $100, and who did not know whether Patrick paid any money down. The rescission of the trades for the land between Bryant and Patrick occurred about November 1, 1886. Bryant turned over to Patrick his notes and gave or paid him $275, Patrick surrendering to Bryant his bonds. Patrick died in the next spring. One Overby had bargained with Bryant for the land described in the bond dated September 19, 1882, and was to pay him $600, $200 of which were due in the fall of 1882. About that time Overby sold it to Patrick for $1,000, Patrick paying Overby $400 and assuming Overby's debt to Bryant. This was done with Bryant's consent, who gave up to Overby his papers and took Patrick as his debtor, Patrick agreeing to pay him $200 then and the balance the next year. About the following March or April, Bryant was heard to ask Patrick if he could not pay him (Bryant) some money, and Patrick said he had none then but hoped to get some by the next sale day.

The following testimony of Overby was objected to by plaintiff, on the cross-examination by claimant, as irrelevant, but it was admitted by the court; to which ruling plaintiff excepted: "There are about sixty acres of land cleared on the premises levied upon and in cultivation, worth two dollars per acre per annum rent."

Plaintiff offered to prove by this witness that the

land described in the bond of April 4, 1876, was worth ten dollars per acre; counsel stating that they had no evidence, and knew of none, to show what Patrick actually agreed to pay Bryant for the land, and offered this as the best evidence in plaintiff's power to show what Patrick agreed at first to pay. To this testimony claimant objected on the ground of irrelevancy, which objection was sustained; and plaintiff excepted.

The testimony for plaintiff tended to show further that Overby heard a conversation between Bryant and Patrick, about October, 1886, in which Patrick wanted Bryant to take back the land, as he did not think he could live long and could not pay for it. Bryant offered to give up his notes and take up his bonds. Patrick would not agree to this, but offered to cancel the trade if Bryant would pay him $300. Bryant declined to do this, and they did not agree on terms. Bryant was afterwards heard to say that he had given him $275. Patrick delivered to Bryant Bryant's bonds, receiving in return his notes; witness did not know how many. At the same time Bryant handed Patrick some money, and said to those standing around, "I am making Patrick a present of $275." This was in the fall of 1886.

A witness testified that, at the present term of court, he obtained the notes in evidence from the widow of Patrick. She and witness hunted for the notes but could not find any others, but she said she had another for $100, and if she could find it would send it to him.

The court held that, inasmuch as the trade between Bryant and Patrick had been rescinded without any fraudulent intent, before the levy was made, the property was not subject; and to this decision the plaintiff excepted.

R. J. & J. McCamy, for plaintiff.

McCutchen & Shumate, for defendants.

Bleckley, Chief Justice.

1. The first question is, assuming that part of the purchase money was paid, whether a rescission of the contract after the judgment was rendered, but before the execution was levied, would prevent the land from being subject to be seized and sold as the property of the purchaser. The code, §3580, is in these words: "All judgments obtained in the superior, justices' or other courts of this State shall be of equal dignity, and shall bind all the property of the defendant, both real and personal, from the date of such judgment, except as otherwise provided in this code." Section 3586 provides for the specific case of part payment of the purchase money where the holding is under a bond for titles. The section declares : "When a person holds property under a bond for titles, and the purchase money has been partially paid, the same may be levied on under judgments against such person, and the entire interest stipulated in the bond shall be sold. The proceeds of the sale shall be appropriated, first to the payment of the balance of the purchase money, and the remainder to the judgment liens according to date. In all such cases, notice of the levy shall be given by the levying officer to the holder of the bond for titles, and also to the maker of the bond, and in case of death, to his legal representatives." In *Dowdell* v. *Neal*, 10 *Ga.* 148, there was no bond for titles, and so that case is not within the letter of the statute. In *Akin* v. *Freeman*, 49 *Ga.* 52, the purchaser transferred the bond before making any payment. *Wilkerson* v. *Burr*, 10 *Ga.* 117, and *Estes* v. *Ivey*, 53 *Ga.* 52, recognize in some degree the liability of land partially paid for to be sold as the property of the purchaser under judgments against him. The case, however, nearest in point is *Rawson* v. *Coffin*, 55 *Ga.* 348. We think it makes no difference that the vendor and maker of the bond took back the land by rescission after

the judgment lien attached. The vendor, by the rescission, simply took the position of a purchaser from his vendee. Kelley v. Bliss (Wis.), 21 N. W. Rep. 609. The ruling in Rawson v. Coffin, supra, is in line with the general law on the subject elsewhere. Freeman on Judgments, §348; Auwerter v. Mathiot, 9 Sgt. & Rawle, 397; Russell's Appeal, 15 Pa. St. 319; Hamilton v. National Bank (La.), 3 So. Rep. 126; Gorham v. Farson (Ill.), 10 N. E. Rep. 1. It was contended in the argument that the statute embraced in §3586 of the code, above quoted, is a mere power, and does not contemplate any lien as existing against the land by virtue of the judgment. This view would make seizure necessary to prevent the holder of the bond from making a transfer free from the judgment. We think this is not a correct view of the statute, and certainly it cannot be harmonized with the decision which was made in Rawson v. Coffin. If that case was well decided, and we think it was, the present case ought to follow it. The act of October, 1885, renders land held under bond for titles and partly paid for subject to dower in behalf of the purchaser's widow. Acts 1884–5, p. 92.

2. There was evidence indicating that some of the purchase money had been paid before the rescission took place. The court ought to have admitted the further evidence of the value of the land at the time the contract of purchase was made, for value, though indirect evidence, is some evidence of price. Mitchell v. Addison, 20 Ga. 53. The value of the land for rent would also throw light upon the question of price.

3. The fact that the defendant in fi. fa. was dead, and the further fact that he had ceased in his lifetime to be the holder of the bond for titles, would excuse the plaintiff from serving him with notice of the levy.

The court erred both in excluding the evidence of value, and in its final judgment holding the land not subject.        Judgment reversed.