Pool *et al. v.* Gramling, Spalding & Company *et al.* ·    88   653
                                                    s111 103ı

                                                    88   653
1. A bill filed under the insolvent traders' act, in December, 1885,   118  204
by the creditors of a firm, alleging insolvency both of the firm and the individual members thereof, and fraud in conveying the assets of one of the members to his individual creditors, which creditors are made parties defendant, can be used to set aside such conveyances if found fraudulent, and the bill is therefore not without equity as to these defendants.
2. When exceptions to a master's report are demurred to on the ground that they "do not plainly and distinctly state the finding or decision complained of and the error committed," this does not raise the objection that the exceptions are not separately classified as exceptions of law and exceptions of fact.
3. Construing the exceptions to the master's report in the light of the whole record, they are sufficiently plain and distinct as to the findings or decisions complained of and the errors committed.
4. In a civil case, the defendants are not entitled to a separate trial, nor is each entitled to strike the full number of jurors, but all of the defendants must join in striking the jury.   Where the regular number of strikes has been exceeded and the jury is thus reduced to eleven, the last man stricken should be restored to the list.
5. Though the report of the master is *prima facie* the truth and the burden of proof is on the party excepting thereto, and a request so to charge ought to be given, yet a request to charge "that the report of the auditor is *prima facie* correct, and should be taken as a correct finding on the facts of the case, and the burden of showing that it is erroneous is on the plaintiffs," is not quite accurate, and for that reason may be declined.
6. In view of the whole charge as given, it was not error to decline the various requests to charge set out in the record.
7. Where a creditor holds an absolute deed as security for a debt, with his bond to reconvey outstanding, and upon the debtor

afterwards becoming insolvent, he takes the property in payment of the debt, the value being largely in excess of the amount of the debt, other creditors may have the property administered in equity as the assets of an insolvent, and the proceeds applied first to the secured debt, and the surplus to their own claims. This may be done without first tendering to the secured creditor payment of his claim.

8. Though the property may consist of a stock of goods, it is generally rightful, and not fraudulent, for a mortgagee to leave the same in the possession of the mortgagor who is conducting an active business; yet this circumstance, taken in connection with others strongly tending to show that the debt was not *bona fide* and that the debtor was about to fail in business, might authorize an inference of fraud by the jury.

9. The statute (Acts of 1881, p. 115) authorizes a court in all civil cases, on request of the jury, to instruct them on the form of their verdict, and such request will be presumed where the court so instructs, unless the contrary appears.    *Judgment affirmed.*
December 7, 1891.

Equity. Debtor and creditor. Insolvent trader. Practice. Exceptions to master's report. Jury. Charge of court. Tender. Fraud. Verdict. Before Judge Richard H. Clark. Douglas superior court. January term, 1891.

On December 28, 1885, Gramling, Spalding & Co. *et al.*, creditors by open account of the firm of Turner & Hudson (composed of G. R. Turner and Allen Hudson), filed their bill against that firm and against W. H. Pool, E. L. Ergle, Samuel Turner and the sheriff, for injunction, receiver and other equitable relief. In this bill the complainants alleged that Turner & Hudson were insolvent traders, and attacked as fraudulent and void a deed from G. R. Turner to W. H. Pool, dated March 19, 1884, and recorded December 18, 1885, and a mortgage from Turner & Hudson to E. L. Ergle, dated December 18, 1885, and foreclosed six days afterwards. They also attacked as fraudulent and without consideration, a transfer from G. R. Turner to Samuel Turner of certain promissory notes which had been given by A. S. Gresham for land sold to him by G. R. Turner.

The deed to Pool covers realty on which stand the store-house in which Turner & Hudson did business, the dwelling-house in which G. R. Turner lived, and another house. The mortgage to Ergle covers all the goods in the store at the time it was made. The complainants allege that the deed to Pool was executed and is held for the purpose of delaying and defeating the collection of debts due by Turner & Hudson to complainants and other creditors; that Turner & Hudson were allowed to remain in possession of the property thereby conveyed, that its execution was kept secret, and it was kept off record for the express purpose of inducing complainants and others to extend credit, and was not recorded until the insolvency of Turner & Hudson was fully known in the county; that before complainants would extend credit, Turner & Hudson represented to them that they owned the property, and on the faith of this property complainants sold them goods; and that if it should appear that there is any amount due by Turner to Pool, for which this property is bound, the same should be sold, Pool's debt satisfied from the money so obtained, the remainder be paid to complainants; and the deed to Pool be cancelled. As to the Ergle mort-gage, the complainants allege that, according to their information and belief, Turner & Hudson did not owe Ergle the amount ($735) for which the mortgage was made, but it was executed with an understanding be-tween them so as to ward off other creditors, and after its execution Turner & Hudson continued to sell goods from the store, with the consent of Ergle, who knew at the time that they were insolvent and owed complain-ants and others, but allowed them to sell several hundred dollars' worth of goods before foreclosing, the amount of which sales should go as a credit on his mortgage if it be held good. They further allege that within the past few days, and since it was found out that Turner &

Hudson were insolvent, G. R. Turner confederated with Samuel Turner, who is his uncle or other relative, and they have an understanding by which G. R. Turner has transferred to Samuel Turner the land notes given by Gresham, and has made him a deed without his having paid anything for the same; and that Gresham, who holds G. R. Turner's bond for titles, has agreed to the making of the deed to Samuel Turner, and to accept his deed on payment of the purchase money notes. They say that the deed to Samuel Turner was made after the foreclosure of Ergle's mortgage, but was dated back to the 18th of December, 1885; and that the only consideration for this transaction was to defeat the collection of the debts due complainants and other creditors.

Pool and Samuel Turner made a motion in the nature of a general demurrer, to dismiss the bill so far as they were concerned; and the overruling of this motion forms one of the exceptions taken here. The case was referred to a master who reported, in brief, as follows:

1st. The deed from G. R. Turner to Pool was executed on March 19, 1884, for the expressed consideration of $650, and Pool gave to Turner a bond to reconvey upon payment of that sum; but before the bill was filed the bond for title was surrendered to Pool and the note for $650 was surrendered to Turner. The firm of Turner & Hudson was not organized until several months after the date of the deed; and therefore it was not executed to hinder and delay their creditors. The complainants do not allege or prove a tender to Pool of the amount loaned or paid by him, nor do they offer to redeem the land. The deed was executed before the passage of the act of 1885 (Acts 1884–5, p. 124), and so is not affected thereby; it passed the title to Pool, and cannot be subjected to the debts of complainants.

2d. The evidence shows that Samuel Turner loaned G. R. Turner $600, and took his note therefor on the

8th of March, 1884, bearing interest from that date, and
that the money has never been repaid; and the deed to
Samuel Turner was executed on the 18th of December,
1885, in payment of his debt, G. R. Turner taking no
bond to reconvey. This was ten days before the sanc-
tion and filing of the bill. There is no evidence to
sustain the charges relied on to set the deed aside; and
so far as the evidence shows, the transaction was fair
and clear of fraud throughout. The prayers as to this
transaction should be denied, and the injunction as to
Samuel Turner and Gresham be dissolved.

3d. Ergle's mortgage was executed on December
18, 1885; execution thereon was issued on December
23, 1885. The mortgage was for $735, with interest at
8 per cent., which principal and interest should be paid
out of the money in the hands of the receiver, after
payment of the amounts mentioned in the next item.
The complainants offered no evidence to sustain their
contention that this mortgage is without consideration,
fraudulent and void. Ergle could enforce his lien at
leisure. The complainants had no lien; none of them
recovered judgments until January, 1886, and their bill
was not filed until five days after the foreclosure of the
mortgage. Turner & Hudson had the right to prefer
Ergle as a creditor, as provided in section 1953 of the
code.

4th. The sum in the receiver's hands is $898.95.
After paying the complainants' attorney a fee of $100
for bringing the fund into court, and after paying the
fees of the master and the receiver, the balance should
be applied to Ergle's execution.

This report was filed on July 6, 1889. During the
same (July) term, the complainants took the following
exceptions :

(1) The master erred in not setting aside the deed to
Pool. Under the law and evidence, it should have been
v 88-42

set aside and the property sold, so far as the creditors
are concerned, and the money applied to the payment
of· the debts according to priority of the demands of
complainants; and if not set aside, then the property
should have been ordered sold and first applied to what-
ever debt was due to Pool, and the remainder paid to
the complainants. It appears from the evidence that
there was but a small amount due Pool, he having
received from the defendants rent sufficient to pay him
all but a small balance. The deed should have been set
aside because it was made as part of an usurious con-
tract, and was absolutely void as a conveyance as to the
creditors, especially as Turner was allowed to remain in
possession of the property and exercise acts of owner-
ship over it, and thereby deceive the creditors, and
induce them to extend him credit, believing he owned
the property, and as the deed was not recorded until
after the complainants had extended credit, and after
their debtors were insolvent, and only a few days before
the bill was filed.

(2) The master erred in holding as he did as to
the transfer to Samuel Turner of the Gresham notes.
These notes should have been turned over to the re-
ceiver, and by him collected and applied to the debts of
complainants; and the deed of G. R. Turner to Samuel
Turner should have been set aside and made void as to
complainants.

(3) The master erred in holding that the Ergle mort-
gage was good as against the claims of complainants.
Under the evidence it is clearly shown that this mort-
gage was not a proper charge against Turner & Hudson,
was only executed to defeat the debts of complainants,
and was not a debt owing by Turner & Hudson at the
time the note secured by the mortgage was given; that
Turner & Hudson were insolvent at the time, and there
was collusion between them and Ergle to defeat the

claims of complainants; and it does not appear how much Turner or Turner & Hudson owed Ergle before the execution of the mortgage. The master should have held that the money in the receiver's hands should be applied to the debts of the complainants; and the mortgage, so far as complainants are concerned, should have been set aside.

At the January term, 1891, the case was called for trial in the superior court, and the defendants moved to strike the above exceptions, on the ground that they do not plainly and distinctly state the finding or decision complained of and the error committed. The motion was overruled, and the defendants excepted. As one of the reasons why the court erred in this ruling, they say that the exceptions to the master's report do not state whether the finding complained of was error of fact or of law.

Over objection of the defendants on the ground that it was then too late to amend, the court allowed the following amendment to the exceptions to the master's report, and the defendants excepted: The master erred in not allowing the complainants, on their motion, to amend the prayers of their bill by asking that if it be found that Samuel Turner paid any sum of money for the land and notes of Gresham, the court decree that Samuel Turner be paid from the amount collected on the Gresham notes, and the balance be paid to the complainants.

The three exceptions to the master's report above stated were sustained, the judge holding, in substance, that Ergle's mortgage is void as a lien; that whatever amount might remain after paying Samuel Turner's claim from the property conveyed to him, should go into the fund to be distributed; and that Pool's debt should be first paid from the property conveyed to him, and the balance remaining should go into the fund for

distribution, his deed being treated as an equitable mortgage and as only a lien against the property to the amount of his debt. To this order the defendants excepted because the exceptions to the master's report do not plainly and distinctly state the finding or decision complained of and the error committed, and do not show whether the master's error was error of fact or of law; because the order sustaining the exceptions does not show what finding or decision of the master is error; and because said order is illegal and void for the reason that the court decided the question at issue, and there was no issue of fact as made by the exceptions and the order approving the same to be determined by the jury.

A trial was then had before a jury, who under the charge of the court found a verdict sustaining the three exceptions to the master's report, above set forth, and further found that the property described in the deed to Pool is assets in the hands of the receiver to be administered, subject to the lien of Pool on the property or the proceeds to the full amount of principal and interest due on his note against G. R. Turner; that Samuel Turner has a lien on the Gresham notes and the land for which they were given, to the exclusion of all other liens, for the amount due him, and when this debt is paid, any excess is for distribution among the other creditors; and that the Ergle mortgage is void, and the proceeds of the sale of the mortgaged goods are assets in the receiver's hands to be administered, but Ergle is not to be prevented from proving his debt against G. R. Turner or Turner & Hudson, and from receiving his *pro rata* share of the fund for distribution, subject to the right of the other creditors to contest said amount as provided by law. The defendants moved for a new trial; the motion was overruled, and they excepted. Among the grounds of the motion are the following:

When the parties had announced ready and the jury

lists were presented to the defendants, they each de-
manded the right to strike six jurors, on the ground
that their issues were separate and distinct, and they
disagreed as to the strikes.  Pool struck J. W. Brown,
and Samuel Turner objected, saying he desired Brown
to remain on the jury.  Turner struck E. B. Mc-
Whorter, and Ergle objected in like manner.  When
the jury was fully stricken, it appeared that there were
only eleven whose names had not been stricken; and
the court directed that the last name stricken by de-
fendants should be called.  That name was W. W. Sel-
man; and Pool objected, saying that he had only two
strikes and had stricken that juror, and was unwilling
for him to remain on the jury.  The objection was
overruled, and Selman was sworn and tried the case.
The court overruled the request of defendants that they
each have full strikes allowed by law.  The defendants
then demanded that the twelve strikes be given to
plaintiffs and the three defendants equally, that is, three
to the plaintiff and three each to the defendants.  This
the court refused.  The defendants then demanded to
have their issues tried separately, which was refused;
and they were required to strike from one list as in or-
dinary cases.  They say this was error.

Error in refusing to charge "that the report of the
auditor is *prima facie* correct and shall be taken as a cor-
rect finding on the facts of the case, and the burden of
showing that it is erroneous is on the plaintiffs."

Refusal to charge: " I further charge you that if the
defendant George R. Turner made a deed to the prop-
erty, as charged in the bill, to Pool as a security for a
loan, then I charge you that the deed passes title to the
land to Pool, and Turner had a bond made by Pool
to execute titles on payment of the money, then Turner
had under the law the right to redeem the land.  And
I further charge you that if Turner was unable to pay

when the debt became due according to the terms of the contract, and if he in good faith surrendered the bond for title and took up his notes and agreed that titles should pass absolutely to Pool, then I charge you that the deed would pass the title to said Pool; and I charge you that the plaintiffs in this case, before they can have this property condemned, must redeem this land by paying the amount of Pool's debt, or an offer to do so and a refusal to accept by him. I further charge you that if the plaintiffs have not redeemed the land, that is, if they have not paid Pool the amount of his debt, or if they or either of them approached Pool and he agreed to accept his debt, then I charge you that no recovery can be had for the plaintiffs, but you should find for the defendant Pool."

Refusal to charge: "If the jury should believe from the evidence that Ergle's mortgage was *bona fide* from fraud, his allowing the mortgagees to remain in possession of the goods mortgaged for three days after this debt became due, would not vitiate the mortgage. I charge you further that his mortgage covering a stock of goods greater than the amount of his claim would not alone vitiate the mortgage, but he could not hold more of the proceeds of the sale of the goods than are necessary to pay his debt, principal and interest. I further charge you, gentlemen of the jury, that if you believe from the evidence that Ergle's mortgage is free from fraud, then it would be a first lien on the funds in the hands of the receiver, to the exclusion of the other creditors, until his debt, principal and interest, is fully paid off."

Error in charging: "Then they say that the master's report, in the third place, is wrong in his judgment upon the Ergle mortgage. They claim before you that this mortgage was made a few days before the absolute disruption of the firm; they say it was for a debt claimed by Ergle against Turner & Hudson, that had been stand-

ing for a long time, so long a time that it was difficult for them to determine upon what it was, and that as a part of the consideration, according to the evidence, there was cotton and other products of like character which was generally paid for in cash at the time or soon thereafter; that it was taken at or about the time the transaction took place between said Pool and said Turner; that it took place near the time when there was a bill filed by all or a portion of the creditors to put them into the hands of a receiver; and that after having taken this mortgage at this late date, Ergle permitted Turner & Hudson to go on four or five days and sell goods. Now, I do not state to you that this is true; it is for you to say whether it is true. I only say to you that the plaintiffs claim this, and not that they have proved this. And I charge you that if the evidence does prove this, it is for you to say whether that mortgage was in good faith or not, or was intended to delay and hinder creditors, or intended to give Turner & Hudson an advantage by that method., Now that is for you to say; if you believe that is the case, then the mortgage is void, and it would be your duty so to declare it."

Error in charging; "Well now, I know it would be difficult for gentlemen of your occupation, and who have no knowledge of law, to form a verdict in this case to meet the exigencies of the case, provided you should find against these several transactions, that is to say, sustaining these exceptions; and as I have written out the form of a verdict which you should find if you come to the conclusion as I have mentioned, that is, if you determine for yourselves that this is the conclusion you come to from the evidence and the law I have given you in charge, you should say, we the jury," etc.

T. W. Latham, P. H. Brewster and W. A. James, for plaintiffs in error.

J. S. James and J. H. McLarty, *contra.*