## WILLINGHAM & CONE *v.* HUGUENIN.

1. The holder of one of several notes secured by the same mortgage may foreclose the mortgage in equity. The holder of the other notes is a proper, even if not a necessary party to the proceeding.
2. A petition for equitable foreclosure by the mortgagee against the mortgagor and the holder of one of the notes secured by the mortgage is not rendered multifarious because of a prayer for a decree to enforce a special agreement between the mortgagee and the holder of

the transferred note, that the former's indebtedness secured by the mortgage should be first satisfied from the proceeds of the mortgaged property.

3. Upon the controlling issues the evidence was without conflict, and it was not error to direct the verdict complained of.

Argued June 8, 1907.—Decided February 3, 1908.

Equitable petition. Before Judge Felton. Bibb superior court. December 17, 1906.

Huguenin filed his equitable petition against Elliott, a resident of Calais, Maine, and Willingham & Cone, a partnership doing a real estate business in Bibb county, Georgia, containing substantially the following allegations: On June 11, 1904, petitioner, being the owner of certain described real estate in the city of Macon, entered into a trade with Elliott, in which he sold to Elliott this real estate, making him a deed thereto, the consideration of which was the assumption by Elliott of a mortgage thereon due by Huguenin to the British & American Mortgage Company for $3,500, the payment by Elliott of $1,000 cash, and the execution and delivery by him to Huguenin of three promissory notes, one for $1,000, due sixteen months after date, one for $1,500 and one for $1,000, due two years and four months after date, bearing interest at 6 per cent. per annum. To secure the payment of these notes the grantee gave the grantor a mortgage upon the property. Elliott went into possession of the property, and has received the rents and profits up to the time of filing this petition on October 28, 1905. Elliott, though called upon by petitioner, failed to pay the taxes for 1904, the city taxes for 1905, and the interest due on the mortgage of the Mortgage Company, due July 1, 1905; and defaulted in the payment of the purchase-money note due October 11, 1905. The facts leading up to the sale to Elliott are set out substantially as follows: For some time prior to this sale petitioner was very ill; and all the negotiations with Elliott, in so far as petitioner were concerned, were made through Willingham & Cone. Some time prior to this sale Calder B. Willingham of that firm came to petitioner and asked him what he would take for the property; petitioner stated $7,000 net, including in the $7,000 the $3,500 due the Mortgage Company; and it was agreed that Willingham & Cone might retain as their commission all they could get above the figure named by petitioner, which was to

be net to Huguenin, including the assumption of the mortgage for $3,500. Willingham informed petitioner that he had found a purchaser, naming Elliott, who, according to Willingham's representations, was perfectly reliable, and worth $35,000 or $40,000; that he had made inquiries as to Elliott's solvency, and approved the trade and advised petitioner to make it. Shortly after these negotiations, petitioner, who was a very ill man, went to the hospital at Baltimore, to be operated upon, and while there he received a telegram from Willingham, stating that he had closed the trade. When petitioner had sufficiently recovered he returned to Macon, and through Willingham & Cone closed the trade with Elliott. The deed, the mortgage, and all the notes passed through the hands of Willingham & Cone; petitioner had had no dealings with Elliott personally, but acted entirely upon their statement as to Elliott, and relied entirely upon them. The price at which the property was sold to Elliott was $8,000, and, after assuming the $3,500 mortgage of the Mortgage Company, Elliott executed his several notes as heretofore set out, for the balance due, $4,500, and petitioner thereupon indorsed the note for $1,000 due two years and four months after date to Willingham & Cone, and delivered it to them as their commissions on the sale, believing that they had made a sale to petitioner's advantage, and that he would receive the balance of the purchase-money without trouble. Elliott has never paid petitioner anything except the $1,000 cash at the time of the trade. He has damaged the property by beginning to make certain changes, and leaving them in an unfinished condition, has failed to make needed repairs, and allowed the building to fall into a bad state of repair generally; so that it will not bring enough to pay the notes due petitioner in addition to the $3,500 mortgage of the Mortgage Company. Petitioner is informed and believes that Elliott is wholly insolvent, and was so at the time the trade was made. He can not make any agreement with Elliott by which he could take the property back, because the note is outstanding, and petitioner is informed that Willingham & Cone claim that the note held by them is a claim upon the property superior to that of petitioner; but it is averred that their claim is inferior to petitioner's and not entitled to be paid out of the proceeds of the sale of the property till after petitioner's claims for the balance of the purchase-money, and his advances

for interest, insurance, etc., have been first paid. Petitioner is informed that Willingham & Cone will seek to hold him personally liable on his indorsement of the $1,000 note, but it is averred that under their agreement with petitioner they were not entitled to any commissions until petitioner had received the sum of $7,000, including the assumption of the $3,500 mortgage of the Mortgage Company; and petitioner fears that unless they are restrained, the note may be traded to an innocent purchaser. This indorsement was not intended to impose any personal liability on petitioner; but it was at the time understood that it was merely made for the purpose of passing title to Willingham & Cone of the note so indorsed, and that it was made without any consideration to petitioner. Willingham & Cone were to take the risk of Elliott being solvent and paying the note, and it was distinctly understood on their part with petitioner that their commission, if any, was to be paid by the purchaser. Elliott's agent in Bibb county has about $75, which petitioner apprehends can not be reached by a judgment in this case unless a receiver is appointed. By reason of the neglect of Elliott to repair the property petitioner's security is being impaired. Though two of the notes are not yet·due, it is alleged to be necessary for the preservation of petitioner's security that a receiver be appointed to take charge of the property, rent it, and collect the rents, issues, and profits thereof until final decree. To the end that every relief may be administered, and to avoid a multiplicity of suits, petitioner presents this his complaint on the equity side of the court, and prays: that a receiver be appointed; that petitioner's mortgage be foreclosed, and petitioner have a judgment against Elliott for the amount of his debt; that the note indorsed to Willingham & Cone be decreed to be inferior to petitioner's claim; that it be decreed that petitioner's indorsement thereon imposes no personal liability, and the holders be remitted to their remedy against Elliott, and petitioner's indorsement be canceled; and that Willingham & Cone be enjoined from selling or otherwise disposing of this note. There is also a prayer for general relief, for process against Willingham & Cone, and for service by publication upon Elliott.

Willingham & Cone demurred generally, and also upon the grounds of misjoinder and multifariousness. They also filed special demurrers. These were overruled; and they answered, deny-

ing that they had received the indorsed note as set out in the petition, but alleging that it was received from Huguenin as their commissions upon the express understanding and agreement that he would indorse it. They also deny that Huguenin in any wise relied upon Willingham to protect him, but aver that he relied solely upon his mortgage upon the property. They also deny that the indorsement was without consideration, but say that Huguenin received the notes and mortgage signed by Elliott as cash, and delivered the $1,000 note to these defendants in payment of their commissions, which was so accepted by them, it being claimed that Huguenin is not only liable upon his indorsement, but that defendants required his indorsement as a condition precedent to accepting the note. They claim a personal liability by petitioner to them on the indorsement, and allege that by reason of the transfer of this note, secured by the mortgage, their claim is superior to that of Huguenin as against the property. They pray for judgment accordingly against Huguenin, and for general relief.

Evidence was submitted before the jury by both parties, and at its conclusion the judge directed a verdict in favor of Huguenin for the balance due on the purchase-money, and the advances made by him. He also directed, that this claim be a lien against the property; that the mortgage be foreclosed subject to the mortgage of the Mortgage Company for $3,500; that out of the proceeds Huguenin be first paid his claim; that any surplus after paying Huguenin be applied to the payment of the $1,000 note held by Willingham & Cone, and the overplus, if any, be paid to Elliott; that the indorsement of Huguenin imposed no personal liability, and that it be canceled; and that a judgment be rendered in favor of Willingham & Cone against Elliott for the amount of the note held by them. A decree was entered accordingly; and Willingham & Cone excepted.

*Hardeman & Jones,* for plaintiffs in error.

*N. E. & W. A. Harris,* contra.

EVANS, P. J. (After stating the facts.)

1. When the statutory remedy of foreclosing a mortgage on realty is inadequate, the mortgage may be foreclosed in equity. *May* v. *Rawson,* 21 *Ga.* 461. The petition presents at least two features calling for an equitable foreclosure. The first concerns matters between the mortgagor and mortgagee. The mortgagor

is a non-resident and insolvent; the taxes on the property have not been paid; the mortgagee has defaulted in the payment of the interest on the incumbrance which he contracted to pay; the mortgagor refuses to repair the roof, and has permitted the building to fall into disrepair; and the mortgaged property is insufficient to pay the mortgaged debt.  Under such circumstances, at the instance of the mortgagee, equity will preserve the security and collect the rents and issues pending the foreclosure.  The statutory remedy is inadequate to afford this relief.  The other aspect of the case relates to the completeness of the relief by joining Willingham & Cone with the mortgagor as defendants.  The mortgagor divided the debt secured by the mortgage into three notes, one of which was transferred by the mortgagee to Willingham & Cone.  The holder of one of several notes secured by the same mortgage may proceed in the first instance to foreclose by suit in equity, but all the holders of notes secured by it must be brought before the court as defendants before a decree is made.  2 Jones on Mort. §1378.  As said by Lord Talbot, "a court of equity in all cases delights to do complete justice, and not by halves."  It is best both for the holders of the notes and the mortgagor that the foreclosure sale shall remove the whole lien from the property, so that contemplating purchasers may bid with the assurance that the lien of the mortgage will be entirely divested from the land. See *Smith* v. *Bowne, 60 Ga.* 484.

2. The petition was not rendered multifarious by the joinder of the holders of a transferred note with the mortgagor, because it set forth one connected interest among them all, centering in the point in issue in the cause.  *Conley* v. *Buck, 100 Ga.* 187. In this connection it is immaterial whether the note of Willingham & Cone be preferred or postponed in payment to those held by the mortgagee.  "The transfer of notes secured by a mortgage or otherwise conveys to the transferee the benefit of the security.  If more than one note is secured and the mortgagee transfers some and retains others, the holder of the transferred notes has a preference over the mortgagee if the security is insufficient to pay both."  Civil Code, §3684.  In the absence of any special contract to the contrary, the indorsement of one of the notes by Huguenin to Willingham & Cone would give the latter a preference of payment, but would not forfeit the right of the other notes to be paid

out of the balance of the proceeds of the mortgaged property. But it is alleged that the note was transferred under a special agreement that the rule of preference prescribed by section 3684 should be reversed, and that Huguenin's notes were to be first paid from the proceeds of the mortgaged property. The note which Huguenin indorsed to Willingham & Cone was payable to Huguenin's order, and the indorsement was in blank. At common law the legal effect of such an indorsement could not be modified by a contemporaneous parol agreement, but our statute has changed the common-law rule. The Civil Code, § 5209, provides that "Blank indorsements of negotiable paper may always be explained between the parties themselves, or those taking with notice of dishonor or of the actual facts of such indorsements." Even if Willingham & Cone should be postponed in priority to Huguenin's notes by special agreement, still they may look to the mortgage for payment of their note according to its priority. Under either view all the notes are secured by the mortgage, and their priority of payment depends on the special agreement as to the transfer of the note. In either event the holders of all the notes are proper parties to the foreclosure proceeding.

3. There was no real conflict in the evidence. Huguenin owned a warehouse. Willingham & Cone were real estate agents. Huguenin consigned the sale of the warehouse to Willingham & Cone, upon terms that he was to receive $7,000 net for the property. Huguenin was not to pay them any commission, but their compensation was to be the difference between $7,000 and the price the purchaser was to give for the property. The real estate agents found a prospective purchaser in one Elliott, of Calais, Maine. Elliott was unable to pay the cash, but offered to give $8,000 for the property as follows: pay $1,000 in cash, assume an existing incumbrance of $3,500, and give his notes for the balance, one for $1,000, due in sixteen months, one for $1,000 and one for $1,500, each due at two years and four months. Huguenin was to make Elliott, a deed to the property, and Elliott was to secure the deferred payments by a mortgage on the property. Willingham & Cone submitted this proposition to Huguenin, who agreed to accept the same on condition that he was to have the cash payment, and Willingham & Cone were to receive their compensation out of the last payment. The necessary papers to effectuate the trade

were prepared at the instance of Willingham & Cone, and carried by them to the home of Huguenin. Huguenin signed the deed. Willingham & Cone handed him a check for $1,000. Huguenin then gathered the mortgage, the check, and all the notes together and was about to place them in his pocket; whereupon Willingham reminded him that the $1,000 note belonged to him, and Huguenin handed it to him. Willingham then requested that Huguenin indorse it, which he did. Nothing more was said at the time. The litigants do not differ at all upon these facts. There are some variances as to the construction which each party placed upon them, but such are merely conclusions, and are of no probative value. The pivotal fact stands out in bold relief that Huguenin did not promise to pay any commissions for the sale of the property, and the real estate agents were to receive their compensation only after Huguenin realized $7,000. This feature of the trade runs through the whole transaction, and the circumstances of the indorsement of the note unmistakably indicate that, as it was payable to the order of Huguenin, his indorsement was not for the purpose of making himself liable, but to transfer the legal title to Willingham & Cone, to whom the note belonged under the contract, and that Huguenin was first to receive from the mortgaged property the sum of $7,000. The mortgagor did not defend; and there was no error in directing a verdict foreclosing the mortgage, and providing that from the proceeds of the sale the mortgagee was to be first paid, and that the transferee of the note be paid out of the surplus, if any.

*Judgment affirmed. All the Justices concur, except Holden, J., who did not preside.*