## KIDD *v.* KIDD.

1. A judgment rendered against the vendor in a security deed after its execution, in favor of a third person, is a lien upon his interest in the property thereby conveyed; and this lien cannot be defeated by a surrender of such property to the vendee in payment of the secured debt, especially when the value of the property is in excess of the secured debt.

2. Where a creditor holds an absolute deed as security for a debt, with his bond to reconvey outstanding, and, upon the debtor afterwards becoming insolvent, he takes the property in payment of the debt, the value being largely in excess of the amount of the debt, other creditors may have the property administered in equity as the assets of an insolvent, and the proceeds applied first to the secured debt, and the surplus to their own claims. This may be done without first tendering to the secured creditor payment of his claim.

No. 4272.    JULY 18, 1924.

Claim. Before Judge Hodges. Hart superior court. February 6, 1924.

On November 3, 1903, W. H. H. Reed bought from Mrs. Adams the tract of land in dispute. Reed was to pay for this land in good middling cotton, or its equivalent in money, as follows: 2480 pounds on October 1 of each of the years 1904, 1905, 1906, 1907, and 1908. The value of the cotton was to be fixed at its market price in Hartwell, Ga., on the dates when it was to be delivered. The contract of sale between Mrs. Adams and Reed was in writing. Reed made certain payments of cotton on the purchase-price

of this land. He erected valuable and permanent improvements thereon of the value of $1000, and terraced and greatly improved the land, which was in gulleys when he bought it. On October 31, 1906, Reed, in order to pay Mrs. Adams the balance due on the purchase-money of this land, borrowed from C. I. Kidd $800, and caused Mrs. Adams to convey the land to Kidd to secure said loan. Reed gave to Kidd his notes for this loan, and Kidd executed to him his bond for title, obligating himself to convey to Reed this land when the loan was paid.

On December 10, 1913, J. Parker Vickery, as administrator of the estate of Mrs. Vickery, obtained a judgment against W. H. H. Reed as principal, and W. M. Kidd and A. A. McCurry as sureties. Execution issued on this judgment. It was entered on the execution docket on December 18, 1913. Kidd, the surety, paid the full amount of this execution to the plaintiff therein, and on the last-named day took a transfer of the execution to himself. On January 2, 1914, W. H. H. Reed and C. I. Kidd entered into a written contract which recited the purchase of the above land by Kidd from Mrs. Adams, and in which it was agreed that the conveyance from Mrs. Adams to C. I. Kidd should stand as an absolute deed passing title in fee simple to said land to Kidd, free from all equity of Reed therein, and that Kidd credited Reed with the amount of $1332.33, being the amount due by Reed to Kidd on the loan hereinbefore referred to. In said contract it was further agreed that Reed had an option to pay to Kidd within 30 days from its date the above amount with interest from the date of the contract at 8 per cent. per annum, and receive from Kidd a quitclaim deed to said land to Reed or to whomever he might designate; but if said sum was not paid within said time, all rights of Reed under this option were to terminate, and Kidd's title was to be an absolute, fee-simple title under said deed from Mrs. Adams to Kidd, it being declared that time under this option was of the essence of the contract, and that Reed was to surrender up possession of said land at the expiration of 30 days to Kidd if he did not pay to the latter the above amount. Reed did not pay the above amount to Kidd within this time limit, and surrendered possession to Kidd.

On January 4, 1915, W. M. Kidd, as transferee of the above-mentioned execution, had the same levied upon the land in dispute.

Thereupon C. I. Kidd filed his claim thereto. In aid of his levy W. M. Kidd filed a petition in which he alleged: that he was surety for Reed on the execution levied; that he paid the same off; that the same was duly transferred to him by the plaintiff in fi. fa.; that Reed is insolvent and was so at the time the levy was made; that the judgment on which the execution issued was obtained on December 10, 1913; that the execution issued thereon on December 18, 1913, and was entered on the execution docket the same day; that at the time he signed the note from Reed to Mrs. Vickery, upon which the judgment was obtained and on which judgment the execution issued, Reed was in possession of the land in dispute; that claimant held the legal title thereto to secure a loan of $800 principal which Reed owed him, with accrued interest; that said loan was obtained from Kidd on or about October 31, 1906; that Reed held the bond for title of Kidd, obligating the latter to reconvey said land to him upon the payment of the above loan with interest; that at the time he signed said note from Reed to Mrs. Vickery said land was well worth $3000, and Reed had an equity to the amount of $2000; that he became the surety of Reed on said note on the credit of his equity in the land; that on January 2, 1914, Kidd took said land from said Reed in payment of said indebtedness, which had been reduced to judgment, and amounted to approximately $1100, that at the time Kidd purchased the land from Reed the same was worth $3000 and is now worth said sum; that Kidd, upon purchasing said land from Reed, delivered to the latter all notes and the execution he held against him, which represented said loan; that said sale by Reed to Kidd was made after said judgment had been obtained against Reed as principal and him and McCurry as sureties; that the sale of said land to Kidd did not free it from the lien of said judgment; that title to said land vested in Kidd subject to the lien of said judgment, and should be found subject to the execution issued thereon; that Kidd bought from Reed with notice of the lien of said judgment; that said land was sold by Reed to Kidd with intention to hinder, delay, or defraud creditors of Reed; and that Kidd bought with full knowledge of this intention, said sale leaving Reed insolvent and unable to pay his debts. He prayed that the land be found subject to the fi. fa., that it be sold, that said Kidd be paid his indebtedness and the balance applied on this fi. fa.

On the trial of the case W. M. Kidd introduced evidence showing that this land was worth, on January 2, 1914, $3000 or $3500. Claimant testified that Reed owed him on the above loan in 1914 $1332.33; that he entered into a contract, the substance of which is set out above; that the cash market value of this land on January 2, 1914, was $10 or $12 per acre; and that Reed surrendered the land to him for what he owed him, and Kidd gave up the notes, aggregating $1332.33, he held against Reed for the loan. He introduced other evidence tending to show that this land was worth from $12 to $15 per acre. The jury returned a verdict in favor of the plaintiff. The claimant moved for a new trial on the general grounds, and by an amendment added the following:

(4) Because the court erred in charging the jury as follows: "I charge you as a matter of law, gentlemen of the jury, that if W. H. H. Reed owed C. I. Kidd a certain sum of money to secure that indebtedness, Kidd held the legal title to the land in question, and Reed held only a bond for title and after Reed went into possession of it as purchaser, and judgment was rendered against him, as contended by the plaintiff in this case, and after the rendition of the judgment Kidd in consideration of the cancellation of his indebtedness against Reed took this land in payment of the indebtedness, and at the time of the cancellation of the debts and the taking of the land in payment of the debt by Kidd the land in question was worth more than Kidd's indebtedness, then I charge you that the land would be subject to whatever excess there existed over and above Kidd's indebtedness; that is to say, it would be subject to whatever amount which would be the difference between Kidd's indebtedness and the valuation of the land at the time of the cancellation and the taking over of the land by Kidd." The errors assigned on this charge are, (1) that it only placed on the plaintiff in fi. fa. the burden of showing an excess in the market value of the land over the debt due the claimant, and excluded from the consideration of the jury the good faith of the parties to the transaction; (2) that it relieved the plaintiff from showing the return of the property by Reed to Kidd was fraudulent; and (3) that the charge was not authorized by the evidence.

(5) Because the court erred in charging the jury as follows: "And I further charge you, if at the time C. I. Kidd took the land over in consideration of his debt to Reed, and if at the time

W. M. Kidd held a lien against Reed and the land was not worth more at its market value than the indebtedness of Kidd, then Kidd would have gotten a good title to the land in question, provided there was no fraud connected with the transaction, as I will hereafter charge you; and in that event, that is to say, if Kidd took over the land and it was worth no more than his debt, if it was in good faith, if there was a bona fide transaction, he would have gotten a good title, and the land would not be subject to the fi. fa., and you should find the property not subject." The exceptions to this charge are the same as those urged to that set out in the preceding ground.

(6) Because the court refused to charge the jury as follows (this charge being requested by counsel for the claimant in writing, and before argument was begun in said case) : "I charge you further as law applicable to this case, that before you would be authorized to find the property in dispute subject to the fi. fa. under which the same is levied, you must believe by a preponderance of the testimony that the transaction between W. H. H. Reed, the defendant in fi. fa., and C. I. Kidd, the claimant, was not made in good faith, and that the property so returned was done fraudulently, and that the fair market value of the same at the time was greater than the balance of the purchase-money due thereon by Reed to C. I. Kidd, and that the same was done by the said Reed with the intention then and there to hinder, delay, or defraud W. M. Kidd, and that this intention was known to C. I. Kidd, the party taking the same, and that he took said land back for said purchase-money debt with notice of such fraudulent intention, or grounds for reasonable suspicion of the intention would be insufficient to set aside said sale and find said property subject to said fi. fa. There must be proven, by a preponderance of the testimony of the plaintiff in fi. fa., the coexistence of all these elements just enumerated."

The court overruled the motion for new trial, and error was assigned on this judgment.

*B. B. Zellars* and *A. S. Skelton,* for plaintiff in error.

*James H. & Emmett Skelton,* contra.

HINES, J. (After stating the foregoing facts.) Whether the trial judge erred in his instructions to the jury, and whether the verdict is contrary to the law and evidence, or either, depends upon

the proper answers to two questions: first, whether the vendor in the security deed, in possession under a bond for title from the vendee, had any interest in or title to the land conveyed by such deed, to which the lien of the subsequent judgment against him attached, independently of any mala fides in the subsequent transaction under which the vendee acquired absolute title to the property embraced in the security deed; and second, if he had such interest or title, whether it could be sold under an equitable petition filed in aid of the levy of the execution, without payment or tender to the vendee in such instrument of the amount of the loan thereby secured, where the vendee had acquired from the vendor the absolute title to the land after the rendition of the judgment, in the manner set out in the statement of facts, and had filed a statutory claim thereto when so levied upon.

1. Undoubtedly, "when land is sold and a portion of the purchase-money is paid by the vendee, and when the vendor delivers to the vendee a bond for title conditioned to make title upon the payment of the balance of the purchase-money, both the vendor and the vendee have a beneficial interest in the land which either may sell or assign." *Dunson* v. *Lewis, 156 Ga.* 692, 700 (119 S. E. 846); *Georgia State B. & L. Asso.* v. *Faison,* 114 *Ga.* 655 (40 S. E. 760). The same principle is applicable in the case of the vendor and vendee in a security deed. In such an instrument the vendee has the legal title which he holds as security for the payment of the money thereby secured; and the vendor has an equitable interest in the premises conveyed, which he can sell or to which he can make a valid second security deed, or on which he can create a valid second lien, subject to the paramount right of the original grantee to have all the land appropriated to the payment of his debt. *Williams* v. *Foy Mfg. Co.,* 111 *Ga.* 856 (36 S. E. 927); *Willingham* v. *Huguenin,* 129 *Ga.* 835 (60 S. E. 186); *Owens* v. *Keeney,* 146 *Ga.* 257 (91 S. E. 65); *Beckcom* v. *Small,* 152 *Ga.* 149 (108 S. E. 542); *Cook* v. *Georgia F. & O. Co.,* 154 *Ga.* 41 (113 S. E. 145); *Carter* v. *Johnson,* 156 *Ga.* 207 (119 S. E. 22). A judgment against the vendor in a security deed, obtained after its execution, binds his equitable interest and estate thereby conveyed. *O'Connor* v. *Georgia R. Bank,* 121 *Ga.* 88 (48 S. E. 716); *Sloan* v. *Loftis,* 157 *Ga.* 93 (120 S. E. 781). This being so, the vendor in such security deed cannot defeat the lien of such judgment by

surrendering the land therein conveyed to the vendee therein in payment of the debt secured by such instrument, especially where the value of the land exceeds the debt secured thereby. *Rawson* v. *Coffin,* 55 *Ga.* 348; *Stewart* v. *Berry,* 84 *Ga.* 177 (10 S. E. 601). The judgment creditor has a right to have the property sold, and, if it brings more than the secured debt, to have the excess applied to his judgment. The status of the vendee in such a case is like that of a landlord who, having a special lien upon the crop of his tenant for rent or supplies, cannot, by purchasing the crop from the tenant at private sale, acquire a title thereto which he can set up to defeat a common-law judgment against his tenant, but must, in order to secure the priority of his lien over such judgment, foreclose the same, cause the crops of the tenant to be sold thereunder, and claim the proceeds of the sale. *Almand* v. *Scott,* 80 *Ga.* 95 (4 S. E. 892, 12 Am. St. R. 241); *Duncan* v. *Clark,* 96 *Ga.* 263 (22 S. E. 927); *Lightner* v. *Brannon,* 99 *Ga.* 606 (27 S. E. 703); *Hall* v. *McGaughey,* 114 *Ga.* 405 (40 S. E. 246). The case at bar is different from *Wiggins* v. *Tumlin,* 96 *Ga.* 753 (23 S. E. 75). In that case the mortgage was given to secure the full purchase-money of a chattel. After the maturity of the purchase-money debt, the mortgagor, without requiring the foreclosure of the mortgage, in good faith and without fraud of any kind returned the property to his creditor in satisfaction of the mortgage debt, the full value of the property not being greater in amount than the purchase-money thus paid. Under these circumstances this court in that case held that the property was not subject to a judgment rendered prior to the execution of the mortgage. In that case the mortgagor had acquired no interest in the property by the payment of any part of the purchase-money. Such a case is different from that where the owner of land conveys it to secure a loan and then surrenders the property in satisfaction of the loan after a common-law judgment has been obtained against him, and where the value of the property thus surrendered exceeds the secured debt. In such a case the vendee who takes the property in satisfaction of the secured debt takes the same subject to the lien of the common-law judgment.

2. A more serious and important question in this case is whether the plaintiff in fi. fa. proceeded by the proper method to subject this land to the lien of his judgment. It is well settled

that the grantor in a security deed has no leviable interest in the land thereby conveyed until the judgment creditor redeems it by payment to the grantee of the full amount of his secured debt. Civil Code (1910), § 6038; *Shumate* v. *McLendon,* 120 *Ga.* 396 (48 S. E. 10) ; *Va.-C. Chemical Co.* v. *Williams,* 146 *Ga.* 482 (91 S. E. 543) ; *First Nat. Bank* v. *McFarlin,* 146 *Ga.* 717 (92 S. E. 69). In other words, the junior judgment creditor cannot enforce his judgment by levy and sale of the property embraced in the security deed, without redemption. Ordinarily he must first pay in full the secured debt, procure the vendee in the security deed to reconvey the property thereby conveyed to the vendor, have the deed of reconveyance recorded, and then proceed to levy and sell. Unless this is done, the claimant can take advantage of non-compliance with these provisions, and is entitled to prevail in the absence of such compliance. Under these circumstances a verdict in a claim case, where the vendee in the security deed is the claimant, finding the property subject, is contrary to law. *Black* v. *Gate City Coffin Co.,* 115 *Ga.* 15 (41 S. E. 259) ; *Sloan* v. *Loftis,* supra. These were claim cases; and the plaintiffs in fi. fa. therein did not invoke equitable aid to enforce their judgments. Is redemption required where the vendor in the security deed, after judgment is obtained against him in favor of another, pays the secured debt by surrendering to the vendee the property embraced in the security deed and by giving to the latter an instrument in writing providing that the security deed shall operate to vest absolute title in the vendee? In other words where there is a total novation of the status of the parties to the security deed by which the relation of debtor and creditor is extinguished and that of seller and purchaser takes its place, and where the vendor is insolvent, must the judgment creditor pay to the vendee in the security deed the full amount of the secured debt before a court of equity, in aid of a levy of an execution on such judgment, will subject the land as an equitable asset to the payment of such judgment, by ordering the land sold, the secured debt paid in full, and the excess applied to the liquidation of such judgment? In *Swift* v. *Lucas,* 92 *Ga.* 796 (19 S. E. 758), this court held that an equitable petition setting up that the land had been conveyed by an absolute deed to secure a loan, bond for title having been given for a reconveyance to the debtor upon payment of the debt, **and**

that the latter had no property except his interest in the land, presented no grounds for equitable relief, in the absence of further allegations setting forth that the tender of the amount due the secured creditor had been made and refused, or that the petitioner was unable from poverty or other cause to make such tender. In that case the status of the vendee in the security deed had not been changed. He was still the creditor of the vendor. He was not asserting absolute title to the land embraced in the security deed. He was not occupying a position of hostility to that originally created by said deed. In *Va.-C. Chemical Co.* v. *Rylee,* 139 *Ga.* 669 (78 S. E. 27), this court held: "In the absence of equitable ground, the mere fact that the lien of a judgment creditor, obtained against the grantor subsequently to the making of the security deed, cannot be enforced by levy and sale until the grantor's title has become revested by redemption, is insufficient to subject the grantor's interest in the land as an equitable asset." In that case this court further said: "Perhaps a judgment creditor, unable by reason of his insolvency or inability to redeem the land, might go into equity and subject the interest of his debtor in land conveyed to another to secure a debt, without redemption; but no such ground for equitable interference is made in this case." The comments made on the case of *Swift* v. *Lucas,* supra, are applicable to the case last cited. In that case the status of the parties to the transaction, evidenced by the security deed, had not been changed. The vendee therein was still a creditor of the vendor therein. The creditor was not setting up absolute title to the property embraced in the security deed. He was not occupying a position of hostility to the subsequent judgment creditor. In *First Nat. Bk.* v. *McFarlin,* supra, certain creditors obtained judgments against B in 1915. In 1904 B had purchased certain land for which A had advanced the purchase-price, taking a deed directly to himself and executing a bond agreeing to convey the land to B upon repayment of the debt; and B entered into possession of the property. In 1911 B executed a contract of sale of the land to C, upon consideration of a stated sum in cash paid, and the assumption of the debt to A. B still retained possession. In 1914 B executed a paper purporting to convey her equity of redemption to D, which expressed a money consideration, but the only purpose thereof was to secure an existing debt owed

by B to D. In March, 1915, B executed a promissory note to E, to secure which she transferred the bond for title issued to her by A. Subsequently D transferred her interest in the property to E. The conveyance by B to D was made for the purpose of avoiding payment of the debts owed the plaintiffs, which fact was known to D and to E at the time D received her conveyance from B and transferred her interest to E. B died in 1915, leaving her husband in possession, who was collecting the rents. The land was worth a sufficient sum to pay the plaintiffs and all valid liens against it. This court held "that a petition in an equitable action instituted by creditors against A, C, D, E, and the husband of B, to require all of the parties to interplead and adjust their claims in one action, and to have a receiver appointed to take charge of the property and collect rents, and to have the property sold and the proceeds applied to the claims of all parties as their interests might be determined by the decree, which alleged facts as above stated, but did not allege that A, the obligor in the bond for title, had been paid his debt, was properly dismissed on general demurrer." In the case last cited the comments made on the two cases cited preceding it are applicable. In the case last cited A was still the creditor of B. The status between A and B had not been changed. He was not claiming title to the land embraced in his security deed under any novation of the contract, evidenced by the security deed, by which novation he asserted title to the land in dispute as its absolute owner.

In the three cases last cited the vendees in the security deeds were still creditors of their vendors; and were not asserting absolute title in hostility to the rights of other creditors who, subsequently to the execution of the security deeds, had obtained judgments against the vendors therein. Under such circumstances the subsequent judgment creditors should be required to pay off the secured debts before levying upon and selling the property embraced in the security deeds. The secured creditors should not be forced into litigation when the subsequent judgment creditors could pay their claims, and then levy upon and sell the lands conveyed by the security deeds. Thus the subsequent judgment creditors had an ample and complete remedy at law by which they could bring to sale the lands embraced in the security deeds involved in the cases cited. This being so, a resort to equity to

enforce their judgments was not necessary. But in the case at bar the situation is different. The vendee in the security deed involved in this case no longer occupied the relation of a creditor of the defendant in judgment. He claimed to be the absolute owner of the premises in dispute. He denies that the plaintiff in fi. fa. has the right to redeem this land upon payment to him of the amount of the debt originally secured by the deed to this land, under which he acquired title as security for such debt. If the plaintiff in fi. fa. had offered to redeem, he would have refused to accept the money, and would have declined to reconvey the property to the judgment debtor so that it could be levied upon under the plaintiff's execution. Undoubtedly the plaintiff would have made a good case for equitable relief, if he had alleged the tender to the claimant of the debt secured and his refusal to accept payment in full thereof when so tendered. As the claimant would have refused such tender, as he was asserting absolute title to this land, any tender of payment by the plaintiff in fi. fa. was excused. Where the claimant by conduct or declaration proclaimed that, if a tender had been made, acceptance would have been refused, tender is excused. *Miller* v. *Watson,* 139 *Ga.* 29 (76 S. E. 585) ; *Burkhalter* v. *Roach,* 142 *Ga.* 344 (2) (82 S. E. 1059) ; *Fraser* v. *Jarrett,* 153 *Ga.* 441 (3) (112 S. E. 487).

Under the facts of this case, we think the true rule is this: "Where a creditor holds an absolute deed as security for a debt, with his bond to reconvey outstanding, and, upon the debtor afterwards becoming insolvent, he takes the property in payment of the debt, the value being largely in excess of the amount of the debt, other creditors may have the property administered in equity as the assets of an insolvent, and the proceeds applied first to the secured debt, and the surplus to their own claims. This may be done without first tendering to the secured creditor payment of his claim." *Pool* v. *Gramling,* 88 *Ga.* 653 (7) (16 S. E. 52).

So we are of the opinion that the trial judge did not err in the instructions given by him to the jury, of which claimant complains; and that the verdict is supported by the evidence.

*Judgment affirmed. All the Justices concur.*