## TURNBULL *et al.* v. FOSTER *et al.*

## FOSTER *v.* TURNBULL *et al.*

1. Where, in pursuance of an agreement between several tenants in common, two of them enter upon the land and make expenditures of money in improvements thereon in excess of the amount received in rents, they are entitled, upon a partition of the land, to an accounting from their cotenants, and to be reimbursed the amount properly found to be due them.
2. A purchaser from one of such cotenants, who takes with notice of the agreement entered into for the improvement of the land, is bound by its terms.
3. One who, by petition, asks to be made a party to a cause pending in the superior court can not, by a cross-bill of exceptions, review the failure of the court to act upon his petition ; nor can such a bill of exceptions be treated as a main bill when it was not tendered within the time prescribed by law.

Argued November 22, — Decided December 12, 1902.

Petition for partition. Before Judge Evans. Morgan superior court. August 30, 1902.

*Anderson, Anderson & Thomas, George & Anderson, Percy Middlebrooks,* and *Q. L. Williford,* for Turnbull et al.
*Samuel H. Sibley,* contra.

CANDLER, J. Mrs. Turnbull filed, in the superior court of Morgan county, a petition against F. C. Foster, L. H. Foster, and F. W. Foster, alleging that she and the defendants were tenants in common of certain described land in Morgan county, entitled each to a one-fourth interest therein, and praying for the appointment of

partitioners to divide the land among the cotenants. Two of the defendants, F. C. Foster and L. H. Foster, filed an answer in the nature of a cross-bill, in which they admitted that they were tenants in common with Mrs. Turnbull and F. W. Foster, of the land described, and that each of the cotenants was entitled to an undivided one-fourth interest in the land, but denied that the plaintiff was at that time entitled to a partition as prayed, making, in support of their contention, substantially the following averments: Together with F. W. Foster and A. W. Foster, they became the owners of the land in question in April, 1882, and in November, 1886, a contract was entered into between the four owners, by which it was agreed that F. C. and L. H. Foster should enter upon the land, clear and put in tillable order all that had ever been cleared and was worth cultivation, as well as so much of the original forest as they, in their discretion, might wish to cultivate, and build all necessary houses for the use of tenants and for the housing of the stock and farm products as the work of opening up the land for cultivation progressed. They were to furnish farming implements, supply the farm with stock, construct fences, "and otherwise improve the place." It was agreed that F. C. and L. H. Foster should have the use of the premises, and should receive the rents, issues, and profits therefrom until they had received back the money thus invested, with seven per cent. interest from the time the payments were made; and after they should be reimbursed for the expenditures made by them on the land, it was agreed that the land should be the property in common of the four Fosters, subject to an equal division between them. In pursuance of this contract, F. C. and L. H. Foster went upon the land in January, 1887, at a time when it was almost wholly unimproved and in very bad condition, and made extensive improvements and additions to the property, which are fully set out in the answer. They averred that the plaintiff acquired her interest in the land from her former husband, A. W. Foster, who was a party to the contract set out, and that she was bound by its terms. The amount of money expended in improving the land was shown by the plea to be largely in excess of the amount realized from it. They objected to a partition of the land until they should be fully reimbursed for the expenditures made by them, but prayed, in the event the court should decree a partition, for an accounting between the four owners of the land, and for a judgment

in their favor for the amount found to be due them on such an accounting, which should be a special lien against the land. Subsequently the court passed an order, reciting that since the commencement of the suit Jacob Phinizy had purchased the interest in the land in dispute formerly owned by F. W. Foster, and directing that Phinizy be made a party plaintiff to the suit and the name of F. W. Foster as a party defendant be stricken.

Mrs. Turnbull demurred specially to the plea, on the ground of the failure of the defendants therein to set forth a bill of particulars. The record does not show whether or not the plea was amended to meet this demurrer, but presumably it was, as the point was not argued in this court. She also demurred on the ground " that said plea or answer, after admitting that the plaintiff is a tenant in common of the land sought to be partitioned as alleged in her petition, does not in law set up any fact that would bar her right to have said land partitioned." The defendants filed an amendment to their plea, in which they set up that Mrs. Turnbull, in acquiring her interest in the land, had actual notice of the agreement under which they went upon and were in possession of the land, and hence was not a purchaser for value and without notice; and that Phinizy, having purchased pending the suit, occupied no better position than his vendor, F. W. Foster. The court passed an order sustaining the demurrer as to so much of the plea as objected to a partition of the land, and overruling it as to that part which set up the right of the defendants to an accounting. An order was also passed referring the case to an auditor to hear and determine certain issues. The auditor found that there were due to F. C. Foster and L. H. Foster certain sums expended by them upon the property in excess of the amount received in rents, and that one fourth of the amount so due was chargeable against each of the four owners of the property. Other findings of law and fact, not material to this discussion, were embodied in the auditor's report. Exceptions of law and fact were filed to that report, which, with some minor exceptions, were overruled by the court, and judgment was rendered substantially in accordance with the findings of the auditor. Mrs. Turnbull and Phinizy filed a bill of exceptions complaining of the overruling of the demurrer to the plea of F. C. and L. H. Foster, the order submitting the case to an auditor, and the judgment sustaining the auditor's report. The only point argued

in this court, however, and consequently the only one that will be dealt with in the consideration of the main bill of exceptions, is as to the correctness of the order overruling the demurrer. At the hearing of the exceptions to the auditor's report, which was on February 2, 1902, Mrs. Pauline Foster, formerly the wife of L. H. Foster, presented to the court a petition in the nature of an intervention, in which she asked to be made a party to the case, setting up certain claims on her part upon whatever amount might be adjudged to be due to L. H. Foster. No order of any sort was passed on this petition, and it does not appear to have been filed. On September 6, 1902, after the signing of the bill of exceptions presented by Mrs. Turnbull and Phinizy, Mrs. Foster tendered to the judge of the superior court what purports to be a cross-bill of exceptions, in which she assigned error upon the refusal of the court to entertain her petition to make her a party to the case, and upon the rendition of the decree in favor of L. H. Foster instead of herself as his assignee.

1, 2. The proceedings to partition, set out in the Civil Code, §§ 4786 et seq. are in the nature of equitable proceedings, in which " the court has all the power and jurisdiction for hearing and determining the various matters in dispute between the parties, in respect to their respective titles, and awarding a partition, according as he shall find the parties entitled, as fully and completely as if it were a bill in chancery for that purpose." *Griffin* v. *Griffin*, 33 *Ga.* 109. See also *Hamby* v. *Calhoun*, 83 *Ga.* 317. The plea of the defendants set up an agreement between the four original owners of the land in dispute, for the making of valuable improvements thereon by two of them, the benefits of which were to accrue to all four. The terms of this agreement are set forth in the plea with sufficient clearness; and as between the original parties thereto, that plea, setting up, as it does, that the defendants have in great part carried out the obligations resting upon them and have spent large sums on the common property in excess of the rents and profits received therefrom, was sufficient, if established, to authorize a decree for a settlement between the parties to the contract. In *Hines* v. *Munnerlyn*, 57 *Ga.* 32, and again in *Arnett* v. *Munnerlyn*, 71 *Ga.* 17, it was held, upon the prayer of a plaintiff for partition and accounting, that " Where a tenant in common has mortgaged the entire estate, and such mortgage has

been foreclosed, a court of equity has jurisdiction to enjoin levy and sale until after partition, especially where the mortgagor is insolvent;" and that "A claim against the cotenant for profits arising from the exclusive use of the estate will form a part of the decree for partition and account, and will take precedence of the mortgage made by him." In *Andrews* v. *Murphy*, 12 *Ga.* 436, the court said: "Account between tenants in common, is a familiar head of equity jurisdiction. . . It delights in doing complete justice, and abhors a multiplicity of suits." In the case of *Lowe* v. *Burke*, 79 *Ga.* 164, the owner of an undivided three-fifths interest in a tract of land brought suit against the owners of the remaining portion, for a partition and accounting. The case came to this court on the overruling of a demurrer to the petition, and it was held that where matter of account against an insolvent cotenant for past profits of the land is involved, and where partition of the premises can not be made without a sale, equity has jurisdiction to decree partition and account; and that "in distributing the proceeds of the sale, it will deduct out of these proceeds, from the share of the party who has to account, a sufficient amount to cover the due share of the cotenants in the income of the property." If the contract set up in the plea of the defendants was capable of being performed, and if the defendants had partly fulfilled the conditions obligatory upon them under its terms, and in pursuance thereof had expended upon the common property sums largely in excess of what they had realized from it, the expenditures made being for the common good of the cotenants, then before the other two original owners could have had the land divided and taken to themselves their respective shares, they would in equity have been required to reimburse the defendants their proportion of the excess of the expenditures over the profits of the land.

In many of the States it is held that one of several tenants in common may, in a proceeding for a partition, recover compensation for improvements made by him without the consent of his cotenants. In the case of Green *v.* Putnam, 1 Barb. (N. Y.) 500, it was held: "Where one tenant in common lays out money in improvements on the estate, although the money so expended does not, in strictness, constitute a lien on the estate, yet a court of equity will not grant a partition without first directing an account, and a suitable compensation ; or else in the partition it will assign

to such tenant in common, that part of the premises on which the improvements have been made. . . To entitle the tenant in common to an allowance on a partition in equity, for the improvements made on the premises, it does not appear to be necessary for him to show the assent of his cotenants to such improvement, or a promise, on their part, to contribute their share of the expense; nor is it necessary for them to show a previous request to join in the improvements, and a refusal." But this doctrine does not universally prevail. In Alabama, for instance, the claim for improvements can only be asserted as a counter-demand to a claim for rents. But, so far as we have been able to find, the authorities are uniform that where consent has been given and an agreement entered into between the cotenants, in consequence of which improvements have been made, on a partition of the land equity will decree an accounting between the cotenants, and will charge to each share of the land the pro rata part of the burdens borne, after deducting from it the value of the benefits received. In this case, after it was decided by the court that the land should be partitioned, there was no obstacle to prevent it from doing complete justice by compelling the defendants to account for all the rents received by them, giving them credit for the amount expended by them in improving the property. It was urged, however, that while the contract set up in the answer of the defendants might have been enforceable as between the original parties thereto, the plaintiffs, not being parties to the agreement, were not bound thereby. This contention is fully met by the amendment filed by the defendants, in which it was alleged that Mrs. Turnbull took with notice of the agreement, and that Phinizy bought pending the suit and was chargeable with notice thereof. It is, of course, clear that if the allegations of the amendment are true, neither of the plaintiffs occupied a better position in regard to the contract for the improvement of the land than did the original parties thereto.

3. We have no difficulty in reaching the conclusion that the question sought to be raised by Mrs. Pauline Foster in her bill of exceptions is not properly before this court for determination. Her petition to be made a party was presented in February, 1902, and no order of any sort was passed thereon. Whether it was overlooked by the court we can not say. The petition does not set up any interest in common with either Mrs. Turnbull or Phinizy, but

only claims a right to whatever amount might be decreed to be due L. H. Foster. That the failure to act on this petition was not matter for a cross-bill of exceptions we think is clear under the provisions of the Civil Code, § 5527. A cross-bill of exceptions is filed by the defendant in error in a main bill of exceptions, and is solely for the purpose of having determined questions of law which were decided by the court below adversely to him, so that, if the case upon the main bill is reversed, the defendant in error may get the advantage, on a new trial, of the rulings of the court. A cross-bill can only be filed by the successful party on the trial below. If, upon the hearing in this court, the judgment on the main bill is affirmed, the cross-bill is generally dismissed. Mrs. Pauline Foster was never a party to the case; the very thing of which she complains is the failure of the court to make her a party. She was neither successful nor unsuccessful upon the trial now under review. It is not necessary to decide whether, in the absence of any order of court, she had a right to file a bill of exceptions and bring her case directly to this court as an original proposition; because if she had that right it has been lost by reason of her delay, for it appears that the alleged error of which she complains was committed on February 21, 1902, no exceptions pendente lite were filed, and the bill of exceptions filed by Mrs. Turnbull and Phinizy was not tendered or certified until September 6, 1902.

*Judgment on main bill of exceptions affirmed; cross-bill dismissed. All the Justices concurring, except Lumpkin, P. J., absent.*