CARMICHAEL *v.* CITIZENS AND SOUTHERN BANK *et al.*

1. A trust is implied "whenever the legal title is in one person, but the beneficial interest, either from the payment of the purchase-money or other circumstances, is either wholly or partially in another." Civil Code (1910), § 3739; *Stern* v. *Howell,* 160 *Ga.* 261 (127 S. E. 776); *Williams* v. *Smith,* 128 *Ga.* 306 (57 S. E. 801). If a person purchases real estate partly with his individual funds and partly with funds which he holds for his minor daughter, the amount of which exceeds the amount of individual funds paid for the property, and takes a deed purporting to convey the land in separate equal shares, one to himself individually and the other to himself as trustee for the use of his minor daughter, an express trust will be created thereby with the father as trustee as to one half undivided interest, and a trust will be implied for the benefit of the minor daughter in the other half interest in proportion to the

Appeal and Error, 4 C. J. p. 848, n. 36; p. 883, n. 33.

Mortgages, 41 C. J. p. 279, n. 19; p. 487, n. 16; p. 488, n. 25; p. 516, n. 93 New.

Tenancy in Common, 38 Cyc. p. 6, n. 25; p. 8, n. 28; p. 72, n. 86, 87, 89.

Trusts, 39 Cyc. p. 104, n. 12; p. 118, n. 5; p. 131, n. 92; p. 150, n. 86; p. 559, n. 29; p. 561, n. 35; p. 565, n. 60; p. 566, n. 68.

Vendor and Purchaser, 39 Cyc. p. 1713, n. 82.

amount of the daughter's funds used by the father to pay for such interest.

2. "The purchaser from a trustee, with notice actual or constructive of the trust, holds as trustee for the beneficiaries; if the purchase be bona fide and without notice, the purchaser holds the property freed from the trust." Civil Code (1910), § 3762. See also § 4531. Under application of the foregoing principle, if a person who has received a deed purporting to convey land in equal shares to himself as trustee and to himself individually as tenants in common, whose individual share is impressed with an implied trust as mentioned in the preceding division, borrows money individually from a third person, and executes a security deed purporting to convey his undivided half interest in the land as security for the amount loaned, the lender will occupy the position of a bona fide purchaser without notice relatively to the minor daughter, and the conveyance to him will not be subordinate to the implied trust.

3. A purchaser of land is charged with notice of recitals in the deed to his vendor, to the effect that the land was purchased with proceeds of the sale of trust funds. *Cheney* v. *Rodgers*, 54 *Ga.* 168; *Hancock* v. *Gumm*, 151 *Ga.* 667 (3) (107 S. E. 872, 16 A. L. R. 1003); *Rosen* v. *Wolff*, 152 *Ga.* 578, 585 (110 S. E. 877). But he is not charged with notice of such recitals when contained in a deed by the vendor to another person, even though the deed purports to convey a part of the same general tract. The recital, in order to charge notice to the purchaser, must be in an instrument constituting a link in his chain of title. *Hancock* v. *Gumm*, supra.

(a) A prior security deed embracing described land was executed to a person individually, and to him as trustee for his minor daughter as security for described notes, which security deed stated that the greater amount of the notes were payable to the defendant as trustee. The notes were subsequently extinguished, under a new agreement, by conveyance of a part of the property to the said person individually and to him as trustee for his minor daughter as tenants in common, expressly stating that their shares were equal, but such conveyance did not mention the security deed or show that the greater amount of the notes was trust funds. *Held*, that, under application of the foregoing principle, the said security deed to the trustee was not a link in the chain of title of the grantee named in a subsequent security deed executed by the father purporting to convey his apparent one half undivided interest in the land as security for his individual liability to a bank; and consequently such grantee was not charged with notice of the recitals in the said prior security deed executed to the father as trustee.

4. At an interlocutory hearing on application for injunction the trustee testified by affidavit to facts tending to show part payment for the one half undivided interest in the land conveyed to him by the deed with trust funds. Such evidence was followed by a statement of circumstances under which the affiant procured the individual loan, in the course of which it was stated to the lender: "That he and his daughter [the cestui que trust] . . jointly owned said lands, and as cotenants, and that he had used and occupied said lands to the entire exclusion of the said [cestui que trust], . . and had received all of the rents, benefits, uses, and profits of the same, and had never accounted to the said [cestui

que trust] . . for her interest in same. . . That [he explained] . . fully to the said Lane the conditions relative to the lands and the relation between the cotenants as is hereinabove set out." There was other evidence tending to contradict the foregoing. *Held*, that the credibility of the witnesses was for decision by the judge as trior of the question of fact, and his finding on such conflicting evidence will not be reversed. *Heibert* v. *Enns*, 127 *Ga.* 378 (56 S. E. 406); *Mathews* v. *Taylor County*, 129 *Ga.* 630 (59 S. E. 273).

5. All other evidence submitted by the plaintiff had reference to other issues in the case, and none of such other evidence tended to sustain the plaintiff's contentions on the issue as to notice of an implied trust.

6. "Wherever two or more persons, from any cause, are entitled to the possession, simultaneously, of any property in this State, a tenancy in common is created. Tenants in common may have unequal shares; they will be held to be equal unless the contrary appears. The fact of inequality does not give the person holding the greater interest any privileges, as to possession, superior to the person owing a lesser interest, so long as the tenancy continues." Civil Code (1910), § 3723. Under application of this law, if a trustee acquires title to specific realty for his individual use and also for the use of his cestui que trust, the entire estate will be an estate in common, and the trustee and the cestui que trust will be tenants in common.

7. A statutory mortgage in this State does not convey title, but only creates a lien on property. Civil Code (1910), § 3256. A statutory security deed conveys title to property as security, and is expressly declared to be "not a mortgage." Civil Code (1910), § 3306. It has been declared to be in effect an equitable mortgage (*Merchants & Mechanics Bank* v. *Beard*, 162 *Ga.* 446, 134 S. E. 107), but vastly different rights arise from the effect of the two classes of security. *Bennett Lumber Co.* v. *Martin*, 132 *Ga.* 491 (64 S. E. 484).

8. "If one tenant in common receives more than his share of the rents and profits, he is liable therefor as agent or bailiff of the other cotenant; and in equity the claim for such indebtedness is superior to liens placed on his interest by the tenant in possession receiving the profits." Civil Code (1910), § 3727. This law is statutory and not derived from the common law, and, properly construed, provides for personal liability against a tenant in common in favor of his cotenant for rents and profits where he receives more than his share, and renders a claim against him therefor in equity superior to *liens* placed by him on his interest in the common property; but does not make such claim superior to a *security deed* made by such tenant in common individually, purporting to convey his undivided interest in the realty to a third person as security for his personal obligation.

9. The foregoing rulings dispose of the controlling questions in the case, and the judge did not err in refusing a temporary injunction.

No. 5032.  SEPTEMBER 23, 1926.

Petition for injunction. Before Judge Hardeman. Emanuel superior court. July 6, 1925.

A testatrix died leaving a surviving husband, a minor child

47

issue of the marriage, and three minor children issue of a former marriage. The husband was nominated as executor of the will, and was named trustee for all the children. The estate left by the testatrix included an estate left by her father, of which she and her mother as sole heirs at law were cotenants. The testatrix left also other property. In a suit instituted by the mother of the testatrix against the husband and all the children, there was a settlement whereby the husband received ten thousand dollars and five promissory notes for $8,000 each, two of them being payable to the husband individually and three of them being payable to him as trustee for his minor child, which notes were secured by a security deed executed by the makers of the notes, in which there was a recital that three of the notes were payable to the husband as trustee for the child and two of them were payable to him individually. On May 12, 1909, the husband received in payment of the notes, on which there was due in principal and interest $44,311, a conveyance of a tract of land which purported to convey the land to the husband individually and as trustee for the child as tenants in common, in the proportion of one undivided half interest to each of them. This deed did not show on its face that three of the notes were separate property of the child. The husband became president of a bank. The bank became indebted to another bank, which indebtedness became due and was being pressed for payment. The husband induced extension of time and an additional loan by the creditor bank to the bank of which he was president, and became surety individually by indorsement for the whole debt, and as security for his indorsement executed a security deed dated February 1, 1921, purporting to convey an undivided half interest in described lands which included the lands above mentioned. The latter bank failed; the debt, being overdue, was reduced to judgment, and execution based thereon was levied, January 7, 1925, on the husband's undivided half interest in the land described in the security deed. On the day before the advertised day of sale the child, having attained majority April 7, 1924, instituted a suit against the husband, the creditor bank, and the sheriff, seeking partition and accounting, and injunction to stay the sale. The petition alleged that the husband was trustee for the petitioner, that he was insolvent, and that his undivided interest in the land was not 1/2 but was only 15/40ths, whereas

petitioner's interest in virtue of having paid the greater part of the purchase-price was 25/40ths; also that in the partition and accounting she should have the value of her portion of alleged rents and profits from the land and claim for waste as a charge upon the husband's undivided interest, superior to the claim of the defendant bank on its security deed and judgment. The petition also alleged that the defendant bank had notice of all the facts relative to petitioner's interest as above indicated, at the time of taking the security deed. This was denied in the answer filed by the bank. At an interlocutory hearing there was conflict of evidence as to the husband being indebted to the petitioner on account of rents and profits, and as to the creditor bank having notice of the claim for rents and profits, or that funds of the plaintiff were employed in purchasing the husband's interest in the land. The judge refused a temporary injunction, and the petitioner excepted.

*A. W. Jordan, I. W. Rountree,* and *Phillips & Abbot,* for plaintiff.

*Price & Spivey* and *Adams & Adams,* for defendants.

ATKINSON, J. 1-7, 9. The rulings announced in headnotes one to seven inclusive, and headnote nine, do not require elaboration.

8. In this case the claim of the cestui que trust as a tenant in common for her share of "rents and profits" and "waste" against her cotenant, who was also her trustee, comes in competition with a security deed covering the individual undivided interest of her cotenant, executed by him under the provisions of the Civil Code (1910), § 3306, to a bank to secure his individual indorsement upon a note for money loaned by the bank. There is a question as to priority between such claim of the cestui que trust upon the undivided share of her said cotenant and the security deed held by the bank to the same undivided share in the common property as security for the individual liability of said cotenant. In deciding this question the right to an accounting as between the two cotenants may be conceded. As to this see *Shiels* v. *Stark,* 14 *Ga.* 429, a case between cotenants not involving third persons, decided in 1854; *Huff* v. *McDonald,* 22 *Ga.* 131 (68 Am. D. 487), also a case between tenants in common and not involving third persons, and decided in 1857; Civil Code (1910), § 3724, which first appeared in the Code of 1863, § 2283, and was formally adopted by

the legislature and became binding as a statute. But conceding the right to such accounting as against the cotenant, how would it affect a third person who had loaned money and received a security deed from the cotenant? The case of *Hines* v. *Munnerlyn,* 57 *Ga.* 32, 35, 36, decided in 1876, involved competition between a claim of a tenant for profits against his cotenant who had taken exclusive use of the common estate, and a mortgage executed by such cotenant upon the entire estate as security for his individual debt. In that case it was said: "Another of the questions made here was whether the complainants, as tenants in common, were entitled to have a decree out of the corpus of the property, on a partition, for the exclusive use thereof by Munnerlyn, their cotenant, since the death of their grandmother. On the part of the defendants it was insisted that the exclusive use of the joint property by Munnerlyn, the cotenant, only created a debt in favor of the complainants as against him, and that that debt created no lien upon the joint property, or upon Munnerlyn's half of it. Whilst it may be true that the complainants have not strictly a legal lien upon the corpus of the joint property, or upon their cotenant's half of it for what he may be indebted to them for the exclusive use of the joint property, still the complainants have a clear equitable right, on a bill filed for partition and account against their cotenant, to have his share of the joint property charged with such indebtedness in the decree for partition, the more especially when their cotenant is insolvent, as in this case: 1 Story's Equity Jurisprudence, sections 654, 655; Code section 3185 [Civil Code 1910, § 5357]."

Subsequently to rendition of this decision the Code of 1895 was compiled and formally adopted by the legislature, and its provisions as to new matter, so far as constitutional, became binding as a statute. *Central of Georgia Railway Co.* v. *State,* 104 *Ga.* 831 (5) (31 S. E. 531). It contained the following new matter which now appears in the Civil Code of 1910, § 3727: "If one tenant in common receives more than his share of the rents and profits, he is liable therefor as agent or bailiff of the other cotenant; and in equity the claim for such indebtedness is superior to liens placed on his interest by the tenant in possession receiving the profits." A marginal note in the Code of 1895 cites the three above-mentioned decisions as the source from which the section was

compiled. As will be noted, the case of *Hines* v. *Munnerlyn,*
supra, involved a mortgage on realty, which under the laws of this
State creates only a lien. Civil Code (1910), § 3256. In adopt-
ing the code section above quoted, the term "mortgage" was not
used, but "lien" was used in describing the subject of which the
cotenant's "claim" for "rents and profits" should be superior.
The term "lien" would include a mortgage, because the office of a
mortgage is only to create a lien (Civil Code (1910) § 3256), and
that is the kind of lien that was involved in the case of *Hines* v.
*Munnerlyn*—a technical lien at law,—but it is not sufficiently
broad to comprehend a conveyance of title to realty. No language
in said section of the code is sufficient to extend to any such con-
veyance. There were ample reasons why the language of the
statute should have restricted the subject to technical "liens" and
should not have extended its provisions to conveyances of title un-
conditionally or as security for a debt. In the first place, it was
known at the time of the adoption of the code section there were
existing statutes providing for conveyance of legal title as security
for a debt, which expressly declared that such conveyances "shall
pass the title . . till the debt . . shall be fully paid, and
shall be held by the courts of this State to be an absolute convey-
ance, . . and not a mortgage" (Civil Code (1910), § 3306);
also that there were statutory provisions for mortgages, and that
mortgages do not pass title but only create liens (§ 3256); and
that vastly different rights arise under application of the two
forms of security. It is not to be supposed, in the absence of ex-
press language requiring it, that the legislature in adopting the
said section in the Code of 1895 intended to uproot or unsettle the
previous legislation, or change results that would follow from ap-
plication of the different forms of security. It must also have
been in the mind of the legislature that in *Pope* v. *Tift,* 69 *Ga.*
741, a case where a widow, being a tenant in common with her
minor child, had mortgaged the whole property and on foreclosure
of the mortgage the property had been sold, this court decided in
1882 that the sale conveyed the interest of the widow but not that
of the child, and that "the child did not have any equitable claim
on the interest of the widow, on account of imprudent manage-
ment of the rest of the estate, superior to the title of the purchasers
under the mortgage fi. fa."

If the claim of a tenant against the undivided interest of his cotenant, as referred to in § 3727 of the Civil Code of 1910, should be superior to a conveyance of legal title as security for a debt or to an absolute conveyance of the separate interest of the cotenant, there is no provision of law for record notice of such claim, and the tenant could have unascertainable secret equities as against the interest of the cotenant, which condition would greatly injure tenants in common by impairing the market value of their interests, because of the apprehension on the part of persons contemplating the purchase of such interests, or otherwise dealing with them, that claims for rents might be established as superior liens. A fair construction of the code § 3727 is that the "lien" there referred to had reference to a technical lien at law, of which kind was the mortgage that was the subject of consideration in the case of *Hines* v. *Munnerlyn,* supra, and upon which the code section was in part predicated; also that it was not intended to include absolute conveyances of legal title to secure debt or for any other purpose. No reference has been made to decisions in other jurisdictions, because the case is governed by local statutes and application of principles recognized by this court, but the decision that the claim of the tenant for rents and profits against the individual share of the cotenant in the common property is not superior to the rights of a third person under a security deed from the cotenant is in harmony with the weight of authority in other jurisdictions. As to this see 7 R. C. L. p. 836, § 32, under the head Cotenant; and elaborate note to the case of Airington *v.* Airington, 27 A. L. R. 182. The recent case of *Bank of Eton* v. *Owens,* 146 *Ga.* 464 (3) (91 S. E. 476), involved a competition between an equitable claim of a tenant and a mortgage executed by his cotenant on the common property; and the ruling there made does not conflict with what has been said above.

*Judgment affirmed. All the Justices concur, except Gilbert, J., disqualified.*