## NEW WINDER LUMBER COMPANY *v.* GUEST.

No. 11024. JULY 3, 1936.

*Clifford Pratt* and *R. H. Kimball,* for plaintiff.
*Roberts & Roberts,* for defendant.

RUSSELL, Chief Justice. C. D. Holliday and his sister, Mrs. H. W. Guest, owned as tenants in common two tracts of real estate, one containing 64 acres and the other 8 acres, not adjoining. Holliday rented the land from his sister, and erected a dwelling-house on the 8-acre tract, procuring certain material from New Winder Lumber Company, which caused to be timely recorded a claim of lien as to both tracts, the claim setting out the owners of the property as "Que Holliday and Marge Holliday Guest." Judgment of foreclosure was rendered on August 25, 1931, against C. D. Holliday generally, with a special lien on the land. Execution issued on the judgment on February 20, 1932, was levied on the property on March 7. On April 4 Mrs. Guest filed a claim to the land. On the trial she introduced a deed to herself and C. D. Holliday as common and equal owners of the land. She also introduced, over objection of the plaintiff in fi. fa., a security deed executed on August 24, 1932, and recorded on the following day, from C. D. Holliday to her, to secure a note for $755.22 of even date. She and her husband testified that the note given by Holliday represented the amount due as her share of the rents, taxes on the property paid by her in excess of her share, lumber sold from the land by Holliday, etc. The jury returned a verdict in favor of the claimant. A motion for new trial was overruled, and the plaintiff in fi. fa. excepted.

Holliday and his sister, Mrs. Guest, received their joint title and became tenants in common by reason of the fact that in the division of the estate of their father a deed conveying the premises involved was executed to them by the other children of their father. At the time the cotenancy was thus created, Holliday was living or went to live on the premises in question. At that time and all the time since, Mrs. Guest has been absent from Jackson County where the land is situated, and has resided in Walton County. It is undisputed that Holliday paid Mrs. Guest rent for the first year of his cotenancy, and some cotton at intervals thereafter, which is certainly contradictory of any theory that his possession gave Mrs. Guest notice of any claim of ownership adverse, or that she had any notice of his adverse claim. Under the law she was entitled to rent, even though the occupancy of her cotenant was by her consent. The parties were tenants in common in 72 acres of land, but it consisted of two tracts, one of 64 acres and

one of 8 acres, and these tracts are not contiguous, but are separated the one from the other by land owned by other persons. Upon the land in dispute at the time Holliday began his cotenancy (and, so far as appears from the record, up to the present time), there was a dwelling-house suitable and sufficient for all the residential needs of the 72 acres of farm land. At some time before July 22, 1930, Holliday, having decided that he would build on the land a residence for himself more to his liking, and without advising with his cotenant or obtaining her agreement so far ,as appears from this record, proceeded to contract with the New Winder Lumber Company for certain finished material for the erection of this new domicile. It is not disputed that the New Winder Lumber Company furnished him this material. The company foreclosed its lien against Holliday alone, although when it was filed the claim of lien included also Mrs. Guest. She had no notice, so far as appears from the record, which would have authorized foreclosure against her. She lived in Monroe, Georgia, and no second original or process was issued or served on her, so far as appears from the record. For several years Holliday had failed to pay taxes on the joint property, and these were paid by Mr. Guest as the agent of his wife. In the construction of the house Holliday used some of the timber cut from the property owned by himself and Mrs. Guest. But there was other timber of Mrs. Guest which Holliday cut and moved and sold, which did not go into the new house. According to the undisputed evidence not less than 75,000 feet of timber was removed from this land, and Holliday sold all of it and received the proceeds. Mrs. Guest testified that she consented for him to cut any timber he desired, but of course she expected him to pay her for her one half of it; and this testimony is not disputed.

The question is whether, in these circumstances, and in this case in equity, a contract of one cotenant obligating himself to pay for material in a house to be erected on the property of the cotenants, without the advice or consent of his cotenant, which contract has been reduced to judgment, is superior to the equitable lien of the tenant in common for reasonable rents and for any money necessarily expended by her in the conservation of the joint property of the tenants in common. We are of the opinion that the judge correctly held that the fi. fa. of the plaintiff in error must yield

to the superior equity of the cotenant. The Code of 1933, § 85-1004, provides for "accounting between cotenants for unequal share of rents or profits." It is declared that "If one tenant in common receives more than his share of the rents and profits, he shall be liable therefor as agent or bailee of the other cotenant; and in equity the claim for such indebtedness shall be superior to liens placed on his interest by the tenant in possession receiving the profits." In § 37-301 it is declared that "Equity jurisdiction over matters of account shall extend to . . where the account is of a trust fund, or accounts between . . tenants in common." We set forth both sections, because under § 85-1004 it is declared that a tenant in common who receives more than his share of the rents and profits shall be liable as an agent or bailee of the other cotenant, and in § 37-301 the same principle is considered where it is declared that equity jurisdiction extends to a trust fund or accounts between tenants in common, thus showing that the legislature had in mind the probability of cases similar to the one now before us. To further show the intention of the legislature on the question now before us, the General Assembly was not content to conclude § 85-1004 without reference to three decisions of the Supreme Court embodied therein, in order to make completely clear the sense in which the section should be construed. The first decision cited by the General Assembly, clothed by law with authority to adopt it, was *Shiels* v. *Stark,* 14 *Ga.* 429, decided by this court at the January term, 1857. Judge Lumpkin, delivering the opinion, held that the principal legal question in the case was whether the lower court erred in charging the jury that if Mr. Stark took possession with the assent of Mr. Shiels, and under an understanding with him, although he may have occupied all the property capable of producing rent, still he would not be liable for rent to his cotenant. Counsel for the plaintiff in error maintains a similar contention in this case. In ruling that the cotenant in possession is liable for rent although he held possession by the consent of his cotenant, Judge Lumpkin said: "The broad proposition which we understand the court to lay down is this: that *occupancy* by one cotenant of the common property, by the *consent* of the other, relieves him from the payment of rent. And some of the old authorities certainly maintain this doctrine—nay, some of the cases go quite beyond this, and hold that liability for

rent can not arise from *mere occupancy.* . . According to the doctrines of the common law, one tenant in common was not liable to his companion, either for waste or the profits of the joint estate; although he may have embezzled the profits, or appropriated the whole to himself. . . The injustice of this doctrine was obviated in England by the statutes of Westminster, 2, 6, 22, and 4 Anne, c. 16, sec. 27, the first giving to joint tenants and tenants in common an action for waste; and the second an account for the profits. (5 Bac. 304.) It is to be presumed, from the reasonableness of their provisions, that these acts are in force in this State, as they are everywhere treated as the general law of this country. It may therefore now be safely laid down as the law, that a joint tenant or tenant in common, who commits waste, or who receives more of the rents and profits than come to his share, to be apportioned either according to his interest in the estate, or the value of that portion of the common property which he occupies, is liable to his cotenant for the waste or for the excess of rents and profits above his share, under the statutory provisions aforesaid, as well as the plainest principles of justice. . . It is stated in Dane's Abr. 1 vol. ch. 8, art. 8, p. 170, in treating of the action of account, 'That it is not necessary that the defendant should have received profits *otherwise than by his occupancy* in order to give a cause of action in the plaintiff upon the statute of Anne. It is sufficient, if he have in any way received more of the issues or profits than comes to his just share and proportion.'" The court quoted with approval from the opinion in Thompson *v.* Bostwell (1 McMullen's Eq. 75): "There is nothing, I think, in the objection that the defendants did not receive rents, but cultivated the lands themselves. To cultivate and have the use of lands *is to receive the rents and profits,* though the occupier is his own tenant." Several rules were laid down as to cases where the tenant in common occupied only part of the premises himself; but these are immaterial in this case, since it was not contradicted that Holliday occupied the entire .72 acres of land. It was said in the opinion in the *Shiels* case that "It is not proper, therefore, to infer that in consenting to the occupancy of Major Stark, under these circumstances, Mr. Shiels intended to waive his right to rent." And so we hold in this case, that the mere fact that Mrs. Guest consented to the occupancy of Mr. Hol-

liday raises no inference whatever that she intended thereby to waive her rights to rent.

The next case cited by the legislature in § 85-1004 is *Huff* v. *McDonald,* 22 *Ga.* 131 (68 Am. D. 487). In the case cited this court held: "1. If one tenant in common, receive more than his just share, he is liable to account to his cotenant for such surplus, and for all the profits which he makes out of such surplus; and if there is proof that he used such surplus, and no proof as to whether he made any profits out of it or not, the presumption is that he made profits out of it, and profits at least equal to the interest on the value of such surplus calculated at the legal rate. 2. If one tenant in common, receive more than his just share, the statute of limitations does not commence running in his favor, so as to bar an action of account by the cotenant, until the tenant begins to hold such surplus adversely to the cotenant, and knowledge of that fact comes to the cotenant." The trial resulted in favor of McDonald, and a verdict for $3,035.12 against Huff and Chambers and $207.17 against Huff. A motion for new trial was overruled, and Huff and Chambers excepted. In the opinion it was said: "The plaintiff and defendants were tenants in common; tenants in common of a piece of land containing a gold mine. The defendants alone worked the mine. They received from it a quantity of gold. This gold they used, delivering no part of it to the plaintiffs. By the 27th section of the act of the 4th of Anne, 'for the amendment of the law and the advancement of justice,' it is amongst other things declared, that 'actions of account may be brought' 'by one joint tenant, and tenant in common, his executors and administrators, against the other, as bailiff, for receiving more than comes to his just share or proportion, and against the. executor and administrator of such joint tenant or tenant in common.' Schley's Digest. 330. If, therefore, one tenant in common, receives more than his just share, he is to hold the surplus above his share, *as bailiff,* for the other tenant in common, and is as bailiff to account for such surplus to that tenant. This seems to be the meaning of the statute. Is a bailiff liable to the payment of interest? 'Bailiff or receiver to any man, &c. By this, &c., many things are implied, as that by bailiff is understood, a servant that hath administration and charge of lands, goods and chattels, to make the best benefit for the owner, against whom an action of

account doth lie for the profits which he hath raised or made, or might, by his industry or care, have reasonably raised or made, his reasonable charges and expenses deducted.' Co. Litt. 172, a. From this it follows, that a bailiff is bound to pay his principal at least the *actual profits,* which he has made out of the property which he holds as bailiff. A tenant in common, who receives more than his share of the profits of the common property, holds the surplus as bailiff for his cotenant, who, therefore, stands to him as his principal. He, consequently, is bound to pay his cotenant the actual profits which he has made out of such surplus, as well as the surplus itself. See Docker v. Somes, 2 Myl. & K. 655, Stor. Eq. 465, 445. Gold of the purity of that taken from this mine is, for all practical purposes, equivalent to money. The gold, therefore, received by the tenants, Huff and Chambers, may be treated as so much money. Now the law, by saying that a particular rate of interest shall be paid for the use of money, says, in effect, that profits arise from the use of money, and that these profits are to be deemed equal, not only to the interest on the money at that rate, but to such interest plus another sum sufficient to pay the person using the money, for his risk, care, trouble and expense, in using the money. The tenants, Huff and Chambers, had the use of the surplus gold, if any, which they received from the mine. They admit that they used all the gold which they received from the mine. It follows, that it is necessary to presume, in the absence of proof to the contrary, that they made profits on this surplus gold, and that those profits were *at least* equal to what would have been the interest on that gold, considering the gold as so much money."

In *Hines* v. *Munnerlyn,* 57 *Ga.* 32, cited by the General Assembly in the Code, § 85-1004, it was held: "1. Where a tenant in common has mortgaged the entire estate, and such mortgage has been foreclosed, a court of equity has jurisdiction to enjoin levy and sale until after partition, especially where the mortgagor is insolvent. 2. A claim against the cotenant for profits arising from the exclusive use of the estate will form a part of the decree for partition and account, and will take precedence of the mortgage made by him." In delivering the opinion Chief Justice Warner said: "1. One of the main questions in the case made on the argument here, was whether Arnett, the mortgagee, should be enjoined from proceeding to sell the mortgaged property until the complainants,

as tenants in common with the mortgagor, could have their interest and share in the property mortgaged by their cotenant, ascertained, set apart, and partitioned to them, as the same existed at the death of their grandmother, without regard to the incumbrance of the mortgage so far as their rights and interest in the property are concerned. There can be no doubt that Munnerlyn, the cotenant of the complainants, could not convey or mortgage the joint property, so far as to affect or prejudice their title to or interest in it, as tenants in common, notwithstanding he may have attempted to convey or mortgage the entire interest in the property. There can be just as little doubt that the complainants were entitled to have the property partitioned between them and their cotenant, C. J. Munnerlyn, without regarding the mortgage executed by him to Arnett. In view of the facts of this case, a court of equity properly had jurisdiction of it for partition. Code, section 3183. 2. Another of the questions made here was whether the complainants, as tenants in common, were entitled to have a decree out of the *corpus* of the property, on a partition, for the exclusive use thereof by Munnerlyn, their cotenant, since the death of their grandmother. On the part of the defendants it is insisted that the exclusive use of the joint property by Munnerlyn, the cotenant, only created a debt in favor of the complainants as against him, and that that debt created no lien upon the joint property, or upon Munnerlyn's half of it. Whilst it may be true that the complainants have not strictly a legal lien upon the *corpus* of the joint property, or upon their cotenant half of it for what he may be indebted to them for the exclusive use of the joint property, still the complainants have a clear equitable right, on a bill filed for partition and account against their cotenant, to have his share of the joint property charged with such indebtedness in the decree for partition, the more especially when their cotenant is insolvent, as in this case: 1 Story's Equity Jurisprudence, sections 654, 655; Code, section 3185. Whether their cotenant is justly indebted to the complainants, in view of their maintenance and education, etc., whilst he was in the exclusive possession and control of the joint property, and what amount, must necessarily depend upon the evidence. Inasmuch as Arnett is interested as mortgagee of Munnerlyn's interest in the property, after a just and equitable partition thereof, he may contest the indebtedness of Munnerlyn to the

complainants, if Munnerlyn himself should fail to do so. Whilst it may be true, as a general rule, that the undivided interest of a tenant in common can be levied on and sold when there are no obstacles in the way, or incumbrances on the property, yet, when there are such obstacles in the way and incumbrances on the property as will prevent a sale of the property for a full price, and enable the purchaser thereof to obtain a good title, it is the better and safer practice to ascertain by a decree of the court what are the rights of the defendant to the property levied on before a sale thereof."

Under the Code, § 85-1004, as construed by the decisions cited, we are of the opinion that Mrs. Guest was entitled to a lien in equity, and that the court properly held it to be superior to the claim of the New Winder Lumber Company. It is zealously contended by counsel for the plaintiff in error, that, as the evidence shows the lien was actually filed by New Winder Lumber Company and not by Holliday, "the lien was not *'placed'* on his interest *by the tenant in possession receiving the profits.* It is a lien which the materialman *placed* on the land and which he further procured by a judgment. . . The lien in the case at bar was not a voluntary lien but was a lien created by a third person against the will of the defendant." It is our opinion that the word "placed" in the Code section must have the ordinary and usual significance of that term, and that for that reason there is no merit in the contention just stated. When the legislature used the word "placed" in this beneficent statute, it was not their intention to restrict its meaning to the filing of the lien and the judgment securing it. The tenant who was in possession might place the lien on his interest by any act which would render it subject to seizure; and in this case in purchasing the material for use on property which he knew was only half his own, he did that very thing. While he was holding out that he owned the entire interest, he was the efficient cause which placed any lien upon the property. The expression, "placing a lien upon the property," as construed in the decisions adopted by the General Assembly as a part of the Code section, applied as well to liens acquired by mortgage and other instruments as to the lien in favor of materialmen. In *Hines* v. *Munnerlyn,* supra, where a mortgage was involved, it did not appear that the mortgagee was consenting to

the foreclosure, and therefore he occupied the same position which counsel contends is occupied by the defendant in fi. fa. in this case. Nothing in our ruling is adverse to the decision in *Carmichael* v. *Citizens & Southern Bank,* 162 *Ga.* 735 (8), 737 (134 S. E. 771), cited by counsel for the plaintiff. On the contrary, the citation is authority for what we have decided. It was there ruled: "'If one tenant in common receives more than his share of the rents and profits, he is liable therefor as agent or bailiff of the other co-tenant; and in equity the claim for such indebtedness is superior to liens placed on his interest by the tenant in possession receiving the profits.' Civil Code (1910), § 3727. This law is statutory, and not derived from the common law, and, properly construed, provides for personal liability against a tenant in common in favor of his cotenant for rents and profits where he receives more than his share, and renders a claim against him therefor in equity superior to *liens* placed by him on his interest in the common property; but does not make such claim superior to a *security deed* made by such tenant in common individually, purporting to convey his undivided interest in the realty to a third person as security for his personal obligation." Nothing we are holding in this case is in any respect in conflict with the decision in the *Carmichael* case. There is one essential difference as to the facts between the *Carmichael* case and the case at bar, in that the cotenant in that case did not create a lien at all, but instead gave his creditor a security deed, thus conveying title to his interest as a tenant in common. For this reason, the court properly held that a security deed is not a lien, as contemplated by the Code, § 85-1004.

What we have said as to the true intent and meaning of § 85-1004 is so controlling as to render without merit the assignments of error on the court's rulings, the charge to the jury, and the refusal to give requested instructions. The admission of the note and the security deed, if error, was harmless. The court did not err in overruling the motion for a new trial.

*Judgment affirmed. All the Justices concur.*