BANK OF TUPELO *v.* COLLIER.

No. 13594.    MARCH 14, 1941.    REHEARING DENIED APRIL 2, 1941.

*Tye, Thomson & Tye* and *R. A. Edmondson Jr.*, for plaintiff in error.

*Bryan, Richardson & Mobley,* contra.

DUCKWORTH, Justice. █ It is contended that the court erred in admitting the execution in evidence, because it describes the lands to be levied on as the lands of Fred W. Hulsey, and in that respect does not follow the decree. It is generally true that an execution must follow the judgment and "describe the parties thereto as described in such judgment" (Code, § 39-104) ; and that an execution which fails to so follow the judgment is not admissible in evidence over the objection of a claimant. *Williams* v. *At-*

*wood,* 52 *Ga.* 585; *Smith* v. *Lockett,* 73 *Ga.* 104 (2); *Calhoun* v. *Williamson,* 189 *Ga.* 65 (3) (5 S. E. 2d, 41). This rule is also applicable to an execution issued on a money decree in equity. Code, § 37-1207. However, the decree on which the execution here involved was issued can not be classified as a "money decree." It was merely declaratory of a pre-existing lien on specific property. *Collier* v. *Bank of Tupelo,* supra. The lands described in the execution in rem are those awarded to Luther J. Hulsey by the partition decree, and the principal amount of the execution is the same as the amount of the lien decreed against the described lands by that decree. The motion seeking the issuance of the execution, made to the court which rendered the decree, recited that Luther J. Hulsey had conveyed all of his interest in the lands to Fred W. Hulsey after the decree had been entered. A court of equity has full power to enforce its decrees. Code, § 37-1203. In pursuance of this power it ordered the issuance of this execution. It showed that it was issued for the purpose of enforcing the special lien declared against the specific property by the partition decree. In this situation, the fact that it described the land as belonging to Fred W. Hulsey was a mere immaterial variation from the terms of the decree, and was not ground for refusing to allow its introduction in evidence. See *Clarke* v. *Millen,* 187 *Ga.* 185 (200 S. E. 698).

■ The next challenge to the execution is based on the ground that the security deed outstanding at the time of the decree is superior to the special lien decreed thereby, and therefore that the land could not be sold thereunder without first paying off the secured debt. *Cecil* v. *Gazan,* 65 *Ga.* 689; *Kidd* v. *Kidd,* 158 *Ga.* 546 (124 S. E. 45); *Roach* v. *Terry,* 164 *Ga.* 421 (138 S. E. 902). This presents the question whether or not the lien of a tenant in common who has paid a cotenant's share of the taxes and street-improvement assessments on the property held in common will be enforced as against one holding a security deed to the cotenant's interest. The 1927 partition decree does not disclose any purpose to determine this question. While it established the amount of the lien and declared it to be a "special lien" against the property awarded to Luther J. Hulsey, it also provided that the "lien" of Fred W. Hulsey under the security deed should attach to this same land—without attempting to determine the relative priority

of each.  As stated by this court on the previous appearance of this case, the decree merely declared and sought to enforce a pre-existing lien.  The decree throws no light on the rank of that pre-existing lien.  The record before us does not disclose the date of the payments of taxes and street-improvement assessments. It is not contended that the grantee in the security deed had notice of any taxes paid before he received his deed.  See *Turnbull* v. *Foster,* 116 *Ga.* 765 (43 S. E. 42). ·

The Code, § 85-1004, declares: "If one tenant in common receives more than his share of the rents and profits, he shall be liable therefor as agent or bailee of the other cotenant; and· in equity the claim for such indebtedness shall be superior to liens placed on his interest by the tenant in possession receiving the profits."  It has been held that the lien recognized by this section is superior to a materialman's lien (*New Winder Lumber Co.* v. *Guest,* 182 *Ga.* 859, 187 S. E. 63), and to a mortgage (*Hines* v. *Munnerlyn,* 57 *Ga.* 32) ; but that it is inferior to a security deed. *Carmichael* v. *Citizens & Southern Bank,* 162 *Ga.* 735 (8) (134 S. E. 771).  It was settled on the first appearance of this case that a cotenant who has expended money for the protection of the joint property by the payment of taxes is entitled to a lien against the interest of his cotenant for his share of the taxes paid.  If the lien for taxes is the same as a claim for rents and profits, it follows that the security deed here involved is superior to the execution under which the levy was made.  On the previous appearance of this case (190 *Ga.* 598) it was said: "Under the rule announced in *New Winder Lumber Co.* v. *Guest,* 182 *Ga.* 859 (187 S. E. 63), the provisions of this section [85-1004] are applicable in favor of a tenant in common who has expended money for the protection of the joint property by the payment of taxes."  It will be noted that it was not said that the cotenant's right to contribution for taxes paid was *derived from* that Code section.  This could hardly be said in view of the fact that the section clearly purports to deal only with a claim for rents and profits.  That opinion further said: "Even if the Code, § 85-1004, be taken as merely a codification of previous decisions, recognizing the right of one cotenant to set up and establish a previously existing equitable lien (*Hines* v. *Munnerlyn,* supra; *Shiels* v. *Stark,* 14 *Ga.* 429; *Huff* v. *McDonald,* 22 *Ga.* 131, 68 Am. D. 487), still the judgment would be un-

affected by the dormancy statutes, since the lien must be regarded, at least as to a reimbursement for taxes and paving assessments, as a lien which pre-existed. . . The judgment . . amounted to but a recognition for the purpose of enforcement of the pre-existing lien in the plaintiff's favor for advances made for taxes including paving assessments, as set forth in her pleadings. Such judgment did not create a theretofore non-existent lien."

In order to protect his interest in the joint property it may sometimes become necessary for a tenant in common to pay the taxes against the property as a whole. At the time the claims here involved arose there was no provision of law for one tenant in common paying his proportionate share of the taxes and releasing his interest from the tax lien. See Code, § 92-5712, for the law as it now stands on this subject. Since the joint property was liable for all the taxes, payment of the same by one cotenant was payment for all. If he paid the taxes by buying in the property at a tax sale, he could not claim as against his cotenants under the tax deed. However, equity will consider the encumbrance paid off as still existing in order to enforce contribution by the cotenants. This principle was recognized and applied in *Johnson* v. *Washington,* 152 *Ga.* 635, 638 (110 S. E. 889), where this court quoted with approval from 7 R. C. L. 873, § 67, as follows: "To secure contribution, equity gives to the purchasing tenant a lien upon the interests of the other cotenants. The redeeming tenant in common is, in order to secure contribution, substituted to the same lien that he has redeemed. Pursuant to this principle, one who redeems property from a tax sale, in which property he afterwards becomes a tenant in common, is entitled to have the lien kept alive as against his cotenant, until the latter shall have paid his share of the taxes. . . The general rule is that where one tenant in common, in order to protect his interest, pays a mortgage on the common property, he is entitled to be subrogated to the rights of the mortgagee and to enforce the mortgage as against his cotenants, to the extent of their liability to contribute to the satisfaction of the mortgage." The principle of subrogation is applicable in favor of a cotenant who pays taxes on the common property. 14 Am. Jur. 113, § 47; 61 A. L. R. 612. See *Livingston* v. *Anderson,* 80 *Ga.* 175 (5 S. E. 48); *Valdosta Bank & Trust Co.* v. *Pendleton,* 145 *Ga.* 336 (89 S. E. 216); *Bleckley* v. *Bleckley,* 189 *Ga.* 47

(5 S. E. 2d, 206). It can not be questioned that the lien of the taxes which the plaintiff in fi. fa. paid was superior to the security deed, whether the lien arose before or after the execution of that deed. Code, § 92-5707. The plaintiff in fi. fa. paid some or all of the taxes by "purchasing" the land at tax sales and taking tax deeds. She could not and did not attempt to claim title under these deeds in the partition suit, but she did rely on them for the purpose of enforcing contribution. While the deeds were ineffective as conveyances of title, they were evidence of the taxes paid; and in equity she was subrogated to the lien of the taxing authorities upon the payment of the taxes for the purpose of enforcing contribution. It was this lien which the partition decree sought to declare and enforce. It follows that the execution is entitled to the priority of the tax liens, and that it is superior to the security deed. This case differs from *Carmichael* v. *Citizens & Southern Bank,* supra, in that the lien there dealt with was not a lien for taxes. For the purposes of this case it is unnecessary to decide whether a merger of title was effected when Luther Hulsey conveyed his equity of redemption to Fred Hulsey, or when Fred Hulsey gave the Bank of Tupelo a warranty deed to the land; for in any event the execution is superior to both the security deed and the equity of redemption. However, see *Knowles* v. *Lawton,* 18 *Ga.* 476 (63 Am. D. 290) ; *Wilder* v. *Holland,* 102 *Ga.* 44 (29 S. E. 134) ; *Woodside* v. *Lippold,* 113 *Ga.* 877 (39 S. E. 400, 84 Am. St. R. 267) ; *Farkas* v. *Third National Bank of Albany,* 133 *Ga.* 755 (66 S. E. 926, 26 L. R. A. (N. S.) 496) ; *Pope* v. *Hammond,* 168 *Ga.* 818 (149 S. E. 204). The court did not err in overruling the claimant's objections to the admission in evidence of the execution.

■ Although the decree in favor of the plaintiff in fi. fa. shows on its face that it is for a gross sum including principal and interest, and it does not specify separately the amount of each, and makes no provision for future interest, the execution issued thereunder includes the sum of $385.70 interest to date of issuance. The court overruled a motion to strike this item from the execution. Only that portion of a judgment which represents the principal due on the original debt is entitled to bear interest. Code, § 110-304; *Bentley* v. *Phillips,* 171 *Ga.* 866 (5) (156 S. E. 898). It was error to refuse to strike the item of interest objected to,

because it obviously included interest on interest. Direction is given that if, during the term at which the remittitur from this court shall be entered in the court below, the plaintiff in fi. fa. will make and file a renunciation of all interest on the judgment and have the execution amended accordingly, there shall be no new trial; otherwise the judgment must be reversed. *Hubbard* v. *Mc-Rae*, 95 *Ga.* 705 (22 S. E. 714).

*Judgment affirmed, with direction. All the Justices concur.*

JENKINS, Justice, concurring specially. This court in *New Winder Lumber Co.* v. *Guest,* 182 *Ga.* 859, 861 (supra), recognized and ruled that under the provisions of the Code, § 85-1004, a claim by a tenant against her cotenant for reasonable rents, "and for any money necessarily expended by her in the conservation of the joint property," was superior to a lien created by the other cotenant on his interest in the joint property. In that case a portion of the moneys expended by the cotenant in the conservation of the joint property consisted, as in the instant case, of taxes. This holding was recognized and cited in *Collier* v. *Bank of Tupelo,* 190 *Ga.* 598 (3), 600 (supra). The previous case, last referred to, was between the same parties as in the instant case, but dealt with an entirely different proposition, to wit, the question whether the judgment obtained by the cotenant, for the amount of taxes exceeding her share, paid by her, had become dormant. In this previous case it was ruled that the claim had not become dormant. This holding was based on the theory that the judgment setting up the lien for the payment of taxes by Mrs. Collier did not create the lien, but merely recognized and established a lien already existing, with the result that it was not subject to the dormancy judgment statutes. The question now before us pertains to the relative rank of Mrs. Collier's lien and the lien of the Bank of Tupelo, founded on a security deed from the other cotenant. I agree to the conclusion of the court in the present case as to the priority of the claim for excess taxes, notwithstanding the fact that this court has twice announced that such a claim comes within the purview of Code § 85-1004, and notwithstanding the holding by this court in *Carmichael* v. *Citizens & Southern Bank,* 162 *Ga.* 735 (supra), to the effect that the priority *referred to in this Code section,* while obtaining as against liens, does not obtain in a contest with a security deed. As was held in the previous decision (*Collier* v. *Bank of*

*Tupelo,* supra), the cotenant's claim for taxes, while impliedly recognized by the statute, was not derived therefrom, and therefore was not dependent upon the statute. The statute, in merely recognizing an equitable right which was already pre-existing, does not have the effect of demoting the rank and dignity of a claim for taxes paid. If all that the Code, § 85-1004, had done was to create and establish a lien of a designated dignity, the rule announced in the *Carmichael* case would govern; but when we say tax payments by a cotenant come within the purview of the section, they come with all the rank and dignity which such a claim possesses. This being true, the ruling in the *Carmichael* case could not properly be taken as subordinating a pre-existing paramount tax lien to a claim of inferior dignity.